This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Roxanne Patterson has appealed from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and awarded permanent custody of her child, Eric, to the Summit County Children Services Board. This Court affirms.
 I.
On March 11, 1996, Ms. Patterson was pulled over by a police officer for a traffic violation. When the officer discovered that Ms. Patterson had an outstanding traffic warrant, he placed her under arrest. Her sons, Eric and Shawn,[1] were taken into custody pursuant to Rule 6 of the Ohio Rules of Juvenile Procedure. On March 12, 1996, the Summit County Children Services Board (CSB) filed a complaint in the Summit County Court of Common Pleas, Juvenile Division, alleging that both children were neglected and dependent. CSB was granted emergency temporary custody and both children were placed with their maternal grandmother.
Shortly after the children were placed with the maternal grandmother, Ms. Patterson, without the approval of CSB, took the children to Canada for several weeks. During that time, CSB was unaware of the children's whereabouts. When Ms. Patterson returned from Canada, she informed CSB of her whereabouts and relinquished the children to CSB. On June 6, 1996, CSB was granted temporary custody of the children. On August 15, 1996, pursuant to the request of CSB, the juvenile court terminated CSB's temporary custody of the children and ordered that the children be returned to their mother with an order of protective supervision. The juvenile court further ordered Ms. Patterson to make certain that Eric attended school on a daily basis and that he attended his various appointments at the Blick Clinic for his physical, occupational, and speech therapy on a consistent basis.
On March 10, 1997, CSB sought temporary custody of Eric and Shawn based on allegations that Ms. Patterson had failed to provide the children with necessary educational, medical and emotional care. On April 1, 1997, CSB was again granted emergency temporary custody of Eric. On February 11, 1998, CSB moved for permanent custody of Eric. Eric's alleged father was served with notice of the motion for permanent custody by publication after a diligent search. A two-day trial on the custody issue was held during July 1998. Eric's alleged father failed to appear or contest the motion for permanent custody.[2] Ms. Patterson was not present during the first day of the trial due to car problems, but she was represented by counsel. On August 6, 1998, the juvenile court issued a judgment entry and order on permanent custody. The juvenile court found that Eric could not be placed with Ms. Patterson within a reasonable time or should not be placed with Ms. Patterson and that it was in the best interest of the child to grant permanent custody to CSB. Accordingly, Ms. Patterson's parental rights were terminated. Ms. Patterson timely appealed to this court, asserting one assignment of error.
 II. The trial court's finding that Eric Patterson should be placed in the permanent custody of the Summit County Children Services Board and that Roxanne Patterson's parental rights should be terminated is not supported by the weight and sufficiency of the evidence.
In her sole assignment of error, Ms. Patterson has argued that the juvenile court erred when it terminated her parental rights. She has contended that there was not clear and convincing evidence that Eric could not have been placed with her within a reasonable time or should not have been placed with her. She has also asserted that the juvenile court had less drastic options available to it, including granting legal custody to Ms. Patterson's mother, Rose Parsons, and that the court did not have clear and convincing evidence that Ms. Parsons was an unsuitable option for placement of the child.
Termination of parental rights is an alternative of last resort; however, it is sanctioned when necessary for the welfare of a child. In re Wise (1994), 96 Ohio App.3d 619, 624. Before a juvenile court can terminate parental rights and award permanent custody of a child who is neither abandoned nor orphaned to a proper moving agency, it must find by clear and convincing evidence that: (1) the grant of permanent custody to the agency is in the best interest of the child; and (2) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. See In re William S. (1996),75 Ohio St.3d 95, 99; see also, Section 2151.414(B)(1) of the Ohio Revised Code.
 The standard of clear and convincing evidence requires more than a mere preponderance of the evidence, but it does not rise to the level of certainty that is required of the beyond a reasonable doubt standard in criminal cases. Rather, it must produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.
In re Rankin (Dec. 23, 1998), Summit App. No. 19118, unreported, at 7. "Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the requisite degree of proof." In re Murphy (April 9, 1997), Summit App. No. 17958, unreported at 3, quoting State v. Schiebel (1990),55 Ohio St.3d 71, 74.
 A.
The Best Interest of the Child.
When a juvenile court determines the best interest of a child, for purposes of ruling on a motion for permanent custody, it is required to consider all relevant evidence, including, but not limited to:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child * * *; [and]
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
Section 2151.41.4(D) of the Ohio Revised Code. The evidence presented at trial demonstrated that the grant of permanent custody to CSB was in the child's best interest.
Regarding the first two factors, testimony was presented that Eric has Downs Syndrome. At the time of the trial, Eric was four years old. He was described as a very loveable, active child. Although there was testimony that Eric had a bond with his mother, there was also overwhelming testimony that Eric bonded easily with everyone. He was described as being able to adjust to different situations with no problems. Eric has bonded with his current foster family and has made significant progress in his therapy. Insofar as the wishes of the child are concerned, Eric was not sufficiently mature to express his desires, however, his guardianad litem recommended that he be placed with CSB.
Regarding the third factor, at the time of trial, Eric had been out of his mother's custody for over twelve months. Testimony indicated that he had made significant progress in his therapy while in foster care because he was getting his therapy on a consistent basis.
Regarding the fourth factor, Eric has special health and educational needs. He requires ongoing and consistent physical, occupational and speech therapies. The juvenile court found that Eric needed a legally secure permanent placement and that that placement could not be achieved without a grant of permanent custody to CSB.
This evidence could reasonably produce a firm belief or conviction that placement with CSB was in the best interest of the child. The juvenile court, therefore, could have reasonably concluded by clear and convincing evidence that the child's best interests were served by termination of Ms. Patterson's parental rights and commitment to the permanent custody of CSB.
 B.
The Placement of the Child with his Parents.
When a juvenile court determines, for purposes of ruling on a motion for permanent custody, whether a child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents, it is to consider all relevant evidence. Section 2151.414(E) of the Ohio Revised Code. If it finds, however, by clear and convincing evidence, the existence of one or more of the circumstances enumerated in Sections2151.414(E)(1) through (12) of the Ohio Revised Code, then it is required to rule that the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. In this case, the juvenile court found the existence of five of those twelve circumstances, from which it concluded that the child could not and should not be placed with Ms. Patterson. It is important to note, however, that each and every condition of Section 2151.414(E) does not have to exist before a court may terminate parental rights. In re Beverly (Mar. 31, 1994), Ross App. No. 93 CA 1992, unreported, 1994 Ohio App. LEXIS 1459, at *11, citing In re Butcher (Apr. 10, 1991), Athens App. No. 1470, unreported. Rather, the court may make its decision based on the existence of only one of the factors. Id. at *11-12.
The juvenile court grounded its determination that Eric could not be placed with Ms. Patterson on the following conditions of Section 2151.414(E):
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties[;]
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time * * *[;]
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
 (9) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect[;]
* * *
(12) Any other factor the court considers relevant.
First, the juvenile court found by clear and convincing evidence that Ms. Patterson failed to sufficiently change her parental conduct to allow her to resume parenting. The juvenile court also found by clear and convincing evidence that she had failed to make the necessary changes such that she could provide an adequate, permanent home for Eric. Eric was removed from Ms. Patterson's custody during March 1997, due to allegations that she had missed medical appointments for Eric. CSB developed a case plan with the goal of reunification. The objectives of the case plan were as follows:
 1. Ms. Patterson will schedule and transport [the child] to all necessary medical and counseling appointments; and
 2. Ms. Patterson will be involved with case management and individual counseling at Portage Path attending consistently.
In addition to the requirements of the case plan, the juvenile court required the following:
 1. CSB observe the child in the care of mother one time per week for the period of December 15, 1997, through March 12, 1998;
 2. [Ms. Patterson] participate in the child's school Wednesday mornings and visit with him after school; and
 3. [Ms. Patterson] receive a psychiatric evaluation at Portage Path and follow all treatment recommendations.
Ms. Patterson's compliance with the case plan was inconsistent. Although she did schedule and transport Eric to some medical appointments, his foster mother often had to transport him when Ms. Patterson failed to show up. Eric's foster mother testified that between October 21, 1997 and July 1, 1998, Ms. Patterson attended only six of Eric's eleven medical appointments. The foster mother also testified that Ms. Patterson never called when she was unable to pick Eric up for his appointments. Ms. Patterson testified that unreliable transportation and/or her work schedule caused the missed appointments.
Ms. Patterson did obtain a psychological evaluation; however, she failed to follow through with the treatment recommendations and failed to attend counseling regularly. Further, CSB was not able to observe Eric in the care of Ms. Patterson as ordered by the court. A CSB worker testified that a case aide was never assigned to observe the visits because Ms. Patterson did not have a stable time or place for visits.
Although Ms. Patterson was ordered to participate in Eric's schooling on Wednesdays from 10:15 a.m. to 11:00 a.m., she only attended six times out of the twenty-three scheduled days. On the days that Ms. Patterson failed to attend the school, the teacher testified that she was never notified that by Ms. Patterson that she would be unable to attend. This evidence could reasonably produce a firm belief or conviction that Ms. Patterson had failed to substantially remedy the conditions that caused Eric to be removed from the home.
Second, the juvenile court found by clear and convincing evidence that Ms. Patterson suffered from a chronic mental illness, chronic emotional illness, and/or mental retardation. A psychologist and a psychiatrist testified regarding Ms. Patterson's mental condition. Both perceived Ms. Patterson as exhibiting symptoms of anxiety attributable to CSB's involvement with her children. The psychologist interviewed Ms. Patterson, administered psychological tests, reviewed the report of the psychiatrist, and spoke with Ms. Patterson's caseworker and attorney in order to evaluate her. She testified that, although anxiety is normal for people in Ms. Patterson's situation, her distractibility and inability to give her life history was more than what would normally be present. She described Ms. Patterson as angry, unhappy and suspicious. She noted that Ms. Patterson had deficits in judgment, insight and reliability.
The psychiatrist also interviewed Ms. Patterson. He testified that Ms. Patterson suffered from an "adjustment disorder with anxiety," which was consistent with someone who had lost her children. Even if Ms. Patterson's arguments regarding the lack of clear and convincing evidence for this factor are correct, the court's decision to grant permanent custody was not based on this factor alone. The juvenile court does not need to find that each and every condition of Section 2151.414(E) exists. In re Beverly,supra at *11. The juvenile court had before it clear and convincing evidence of other factors to support the determination that Eric could not be placed with Ms. Patterson within a reasonable time, or should not be placed with her.
Third, the juvenile court found by clear and convincing evidence that Ms. Patterson demonstrated a lack of commitment toward Eric by failing to regularly visit him and by showing an unwillingness to provide an adequate home for him. Eric's foster mother testified that Ms. Patterson would not consistently show up for scheduled visits and that, when she did show up, she was often late and/or would bring Eric home early. She testified that Ms. Patterson would rarely call when she was unable to make a scheduled visit and that, when she had made excuses for not showing up, her absence was generally attributed to car trouble or her work schedule.
The foster mother testified that many changes were made in the visitation schedule to accommodate Ms. Patterson's schedule. A CSB worker testified that Ms. Patterson was offered free bus passes to enable her to visit Eric, but Ms. Patterson refused the bus passes. Between January 3, 1998 and July 5, 1998, Ms. Patterson missed fifty-three of the eighty-two scheduled visits. Ms. Patterson testified that the missed visits were caused by her work schedule and car problems. This evidence could reasonably produce a firm belief or conviction that Ms. Patterson demonstrated a lack of commitment toward the child by failing to regularly visit.
Fourth, the juvenile court found by clear and convincing evidence that Ms. Patterson allowed Eric to suffer neglect as described in Section 2151.03of the Ohio Revised Code and that the likelihood of recurrence of the neglect makes the child's placement with Ms. Patterson a threat to his safety. Pursuant to 2151.03(A), a "neglected child" includes any child:
 (1) Who is abandoned by the child's parents, guardian, or custodian;
 (2) Who lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian;
 (3) Whose parents, guardian, or custodian neglects the child or refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well being;
 (4) Whose parents, guardian, or custodian neglects the child or refuses to provide the special care made necessary by the child's mental condition;
 (5) Whose parents, legal guardian, or custodian have placed or attempted to place the child in violation of sections 5103.16 and 5103.17 of the Revised Code;
 (6) Who, because of the omission of the child's parents, guardian, or custodian, suffers physical or mental injury that harms or threatens to harm the child's health or welfare;
(7) Who is subjected to out-of-home care child neglect.
As previously noted, the juvenile court heard testimony that Eric has special health and educational needs. Several witnesses testified that he needs constant supervision and consistent therapy. While he was in foster care, he made significant progress because he was receiving his therapy consistently. Eric was removed from Ms. Patterson's custody based on allegations that she had failed to take him to his therapy sessions.
Ms. Patterson testified as to why she missed the medical appointments that caused CSB to seek temporary custody of Eric. She testified that she failed to attend one appointment because it was raining and that she did not want to take her youngest child, Christopher,[3] out in the rain because he was too young. She testified that she missed the second medical appointment because her brother-in-law had wrecked her car.
The case plan implemented by CSB required Ms. Patterson to schedule and transport Eric to all medical and counseling appointments. As previously noted, Ms. Patterson only attended six of his eleven scheduled appointments. Ms. Patterson testified that her missed appointments and visitations were due to either her job or car trouble, yet she declined CSB's offer of free bus passes. This evidence could reasonably produce a firm belief or conviction that Ms. Patterson allowed Eric to suffer from neglect.
In this case, the juvenile court had before it clear and convincing evidence of the circumstances listed in Sections2151.414(E)(1), (4) and (9) of the Ohio Revised Code, as well as relevant evidence falling under Section 2151.414(E)(12). Any one of those sections supports the juvenile court's determination that Eric could not or should not be placed with Ms. Patterson.
From the evidence introduced at trial, the juvenile court could have found by clear and convincing evidence that the commitment of Eric to the permanent custody of CSB was in his best interest and that he could not and should not be placed with Ms. Patterson. Consequently, the juvenile court did not err by making that determination. Ms. Patterson's argument is without merit.
 C. Option of Legal Custody
Ms. Patterson has also argued that the trial court did not have clear and convincing evidence that Ms. Parsons was an unsuitable option for the placement of Eric. The willingness of a relative to care for the child does not alter what a court considers in determining permanent custody. In the matter ofMastin (Dec. 17, 1997), Lorain App. Nos. 97CA006743 and 97CA006746, unreported, at 7. In a permanent custody hearing, the court has the discretion to award legal custody to either parent or any other person who files a motion requesting legal custody. See Section 2151.353(A)(3) of the Ohio Revised Code. Further, this Court has held that Section 2151.353 does not require the juvenile court to consider placement with a relative before granting permanent custody. In re Dye (Apr. 19, 1995), Summit App. Nos. 16927 and 16932, unreported, at 5. The juvenile court, therefore, was not required to find by clear and convincing evidence that Ms. Parsons was an unsuitable placement option.
It was within the juvenile court's discretion to determine whether to place Eric with Ms. Parsons. A reviewing court will not reverse the judgment of a juvenile court absent an abuse of discretion. In re Pieper Children (1993), 85 Ohio App.3d 318,330. To constitute an abuse of discretion, a trial court's action must have been arbitrary, unreasonable, or unconscionable. Stateex rel. The V Cos. v. Marshall, (1998), 81 Ohio St.3d 467, 469.
CSB did attempt to find an appropriate relative placement for Eric. After a careful investigation of Ms. Parsons, CSB determined that, although her home was sufficient to care for the child, she was unable to provide the child with the necessary level of care. The court heard testimony that the grandmother worked forty hours a week. She was unable to articulate specific child care plans in the event that she was granted legal custody. The court also heard testimony that she allowed Ms. Patterson to remove Eric from her home despite the fact that the child was placed there by CSB. There was also testimony that Ms. Parsons had harbored Ms. Patterson's other child, Shawn, when he had run away from CSB's placement.
The juvenile court examined all of the evidence and determined that placing Eric with Ms. Parsons was not in the best interests of the child. This Court does not find that the juvenile court's actions were arbitrary, unreasonable, or unconscionable. Ms. Patterson's argument is without merit.
 III.
Ms. Patterson's assignment of error is without merit. The judgment of the juvenile court is affirmed.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ BETH WHITMORE
 FOR THE COURT
BAIRD, P.J., SLABY, J.
CONCUR
[1] Custody of Shawn is not an issue in this appeal.
[2] The alleged father is not a party to this appeal.
[3] Custody of Christopher is not at issue in this case.