DECISION AND JUDGMENT ENTRY
This is an appeal from a Hocking County Common Pleas Court, Juvenile Division, judgment awarding appellee, Hocking County Children Services (HCCS), permanent custody of Kenneth Dyal, born November 15, 1998.
Appellant, Rhonda Smith, the maternal grandmother of the child, raises the following assignment of error for review:
 "THE LOWER COURT ABUSED ITS DISCRETION WHEN IT DETERMINED THAT APPELLANT, RHONDA SMITH, WAS NOT A SUITABLE RELATIVE FOR LONG TERM PLACEMENT OF KENNETH MICHAEL DYAL."
Our review of the record reveals the following facts pertinent to the instant appeal.[1] On October 9, 1999, police officers responded to a report of an apparent suicide attempt at the home where Veronica Dyal, Kenneth's natural mother, had been living with Kenneth and with Karen Moore, Dyal's aunt. Moore reportedly attempted suicide in Kenneth's presence.
Both Dyal and Kenneth were transported to the police station. HCCS Caseworker Linda Olvera met with Dyal and Kenneth. Olvera noted that Dyal appeared to be drunk and that Dyal admitted she had taken three Klonidan. While at the police department, Dyal became verbally assaultive toward the officers.
At the police station, Olvera reviewed pictures the officers had taken of the home where Dyal and Kenneth had been staying and noted that: (1) blood covered the kitchen floor, table, and walls; (2) the home had dirty floors; and (3) beer bottles were scattered throughout the kitchen and living room.
The officers subsequently arrested Dyal for a probation violation and she spent six days in jail. On October 9, 1999, the trial court issued a protective order placing Kenneth in HCCS's temporary custody.
On October 11, 1999, HCCS filed a complaint alleging Kenneth to be a dependent child as defined in R.C. 2151.04(C) and requested temporary or protective custody of Kenneth. On October 26, 1999, appellant filed a complaint requesting the trial court to grant her custody of Kenneth.
On November 15, 1999, HCCS filed a case plan that listed the following concerns: (1) substance abuse; (2) "GED" (General Education Degree); (3) driver's license; (4) inappropriate babysitters; (5) counseling; (6) probation; and (7) parenting. The case plan required Dyal to address the foregoing concerns as follows: (1) Dyal will have a complete drug and alcohol assessment, will follow her counselor's recommendations, will learn the effects alcohol and drugs have on her parenting skills and how it affects her child, and will attend a support group such as AA; (2) Dyal will obtain her GED; (3) Dyal will obtain a driver's license; (4) Dyal will provide adequate day care and other services for Kenneth; (5) Dyal will complete a mental health assessment and a psychological evaluation and will follow through on all recommendations; (6) Dyal will abide by probation rules; and (7) Dyal will attend parenting education classes to learn how to effectively parent.
On December 2, 1999, Dyal admitted that her son is a dependent child. The court ordered Kenneth to remain in HCCS's temporary custody and ordered Dyal to: (1) attend counseling at Tri-County Mental and Counseling; (2) follow the counselor's recommendation; (3) complete an alcohol and drug service program; (4) complete a GED program; and (5) obtain employment.
On October 11, 2000, HCCS filed a motion for permanent custody. In its complaint, HCCS alleged that: (1) Kenneth had been in its temporary custody for at least twelve of the past twenty-two months; (2) HCCS made diligent efforts to implement the case plan; (3) Dyal had not completed parenting classes; (4) Dyal had not attended counseling sessions; (5) Dyal had been terminated from Stepping Stones, a treatment program, due to a lack of cooperation; (6) Dyal recently tested positive for barbiturates on two separate occasions; (7) Dyal had not paid any child support; (8) a relative placement was not available; and (9) Kenneth's best interest would be served by awarding HCCS permanent custody.
On November 9, 2000, appellant filed a motion for custody of Kenneth. On November 30, 2000, the guardian ad litem filed his report and recommended that HCCS be given permanent custody of Kenneth. The guardianad litem noted that Kenneth's natural father's whereabouts are unknown and that the natural father has had no contact with Kenneth. The guardianad litem further stated that Dyal "has taken no steps to work on the goals set by the case plan. She has not completed counseling sessions or drug treatment." The guardian ad litem also observed that Dyal tested positive for drugs and that she has paid no child support. The guardian concluded that Kenneth's best interests require "a stable home environment as soon as possible."
On January 9, 2001, the trial court held a hearing regarding HCCS's permanent custody motion. HCCS employee Beverly Edwards stated that she has observed the supervised visits between Dyal, appellant, and Kenneth. Edwards stated that Dyal and appellant brought toys for Kenneth and that they brought clothes for Kenneth during Christmas. Edwards stated that: (1) Kenneth interacts well with his mother and appellant; (2) the three always look like they are having a good time; and (3) they appear to share a loving relationship. Edwards testified that she has not observed either appellant or Dyal disciplining Kenneth in an inappropriate manner. Edwards stated that appellant likes to read to Kenneth while Dyal likes to color with him. Edwards stated that Kenneth is a very happy boy, is easy to get along with and is outgoing.
Edwards testified that appellant and Dyal do not always stay the full two hours allotted for visitation and that they canceled on five occasions. Edwards explained that HCCS offered to extend the visits to three hours but that appellant and Dyal responded that they did not want to sit in the room for three hours. Edwards stated that the agency suggested that the visits could occur outside the agency building, but that appellant and Dyal still refused.
HCCS caseworker Linda Olvera testified that she did not believe that placement with appellant would be an appropriate solution. HCCS investigated placing Kenneth with appellant and discovered that the State of Florida explored placing Dyal's other son with appellant, but that the State determined appellant would not be suitable. HCCS also learned that appellant possesses a criminal record.
Appellant testified that her oldest son left home at the age of fifteen and that she relinquished custody of Dyal when Dyal was a young child. Appellant explained that appellant's mother, who lived in Florida, was ill with cancer and that she sent Dyal to stay with her. Appellant stated that Dyal lived with appellant's mother until appellant's mother died. Appellant stated that the State of Florida then refused to return Dyal to her custody. When Dyal was old enough, Dyal lived with her aunt, Karen Moore. Appellant further stated that as a young child, Dyal's father, an uncle, and a male babysitter had sexually molested Dyal.
Appellant testified that she does not think Dyal is now ready to have her son returned to her custody, but that Dyal might be ready to care for her son within the next year. Appellant informed the court that she would be willing to care for Kenneth and that she has a room prepared for him.
On March 16, 2001, the trial court granted HCCS permanent custody of Kenneth. The court noted that: (1) the case plan required Dyal to received treatment and to return clean drug and alcohol screens: (2) Dyal attended RWRP for sixty days and completed the program; (3) Dyal worked on her GED but did not obtain it; (4) Dyal was terminated from Stepping Stones after failing to adhere to the rules; (5) Dyal did not comply with the TASC program, a condition of her probation, and had several positive drug screens; (6) Dyal does not have her own permanent residence, but stated that she is in the process of trying to obtain her own residence and that she has a "HUD certificate"; (7) Dyal is not presently employed, but stated that she plans on attending truck driving school; (8) Dyal had another child removed from her care three years ago; (9) appellant's residence appears to be satisfactory; (10) appellant and appellant's husband, Kenny, have criminal records, including theft, disorderly conduct, and possession of burglary tools; (11) appellant sent Dyal as a young child to live with appellant's mother; and (12) Dyal's natural father sexually abused her.
The court further found that Dyal has a significant substance abuse problem and that Dyal has failed to obtain employment, to obtain suitable and stable housing, and to obtain a GED. The court thus found that Kenneth could not be placed with his mother. The court further found that "there is no suitable relative placement for long term placement that could enable a satisfactory termination of the case in the best interest of the minor child."[2] The court noted that Kenneth is adoptable. The court, therefore, granted HCCS's motion for permanent custody.
In her sole assignment of error, appellant asserts that the trial court erred by determining that she was not a suitable relative placement for Kenneth. Specifically, appellant contends that the trial court should have concluded that Kenneth's best interests would be served by awarding her custody. We disagree with appellant.
In a dispositional hearing, a court considering a permanent custody motion possesses discretion to award legal custody to either parent or to any other person who files a motion requesting legal custody. See R.C.2151.353(A)(3); In re Evans (Feb 2, 2000), Summit App. No. 19489, unreported; In re Patterson (1999), 134 Ohio App.3d 119, 730 N.E.2d 439;In re Benavides (May 3, 2001), Cuyahoga App. No. 78204, unreported. We note that the statute does not require a juvenile court to consider relative placement before granting the motion for permanent custody. In other words, a juvenile court need not find, by clear and convincing evidence, that a relative is an unsuitable placement option prior to granting the permanent custody request. Relatives seeking the placement of the child are not afforded the same presumptive rights that a natural parent receives as a matter of law. See In Re Davis (Oct. 12, 2000), Cuyahoga App. No. 77124, unreported. Rather, the juvenile court is vested with discretion to determine what placement option is in the child's best interest. See Patterson, supra; Benavides, supra.
Generally, a trial court's discretion with respect to child custody issues should be accorded the utmost respect, especially in view of the nature of the proceeding and the impact the court's determination will have on the lives of the participants. See, e.g., Davis v. Flickinger
(1997), 77 Ohio St.3d 415, 674 N.E.2d 1159. Absent an abuse of discretion, a reviewing court should affirm a trial court's judgment. Thus, a reviewing court will not overturn a trial court's custody or placement judgment unless the trial court has acted in a manner that can be characterized as arbitrary, unreasonable or capricious. See, generally, Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140. The underlying rationale of giving deference to the trial court's finding is based upon the premise that the trial court judge is best able view the witnesses and observe their demeanor, gestures, voice inflections, and to use those observations when weighing the testimony and evidence.
Our review of the record reveals that Kenneth appears to share a loving relationship with both his grandmother and his mother. HCCS employees testified that: (1) the supervised visits between Kenneth and his mother and his grandmother appeared to go well and that the three interacted in an appropriate manner; and (2) Kenneth smiled and appeared happy while in his mother's and his grandmother's presence. The record further reveals, however, that appellant did not always take advantage of the full time allotted for visitation and that she canceled five sessions.
Appellant asserts that she has cared for Kenneth since he was an infant and that she could provide him with "a clean home and the nourishment and necessities he needed." Appellant further asserts that the trial court did not consider, when granting the permanent custody request, Kenneth's: (1) interaction and interrelationship with his grandmother (appellant); (2) custodial history; (3) need for legally secure placement and that the placement could be achieved without a permanent custody award. See R.C. 2151.414(D). Appellant also notes the favorable testimony elicited from the children services employees concerning appellant's relationship with Kenneth.
We note that the guardian ad litem candidly admits that during the trial court proceeding, he believed that Kenneth should be placed with appellant. In his appellate brief, however, the guardian ad litem states that although he thought appellant should be given a chance to parent Kenneth, he does not believe, based upon the evidence adduced at trial, that the trial court's judgment constitutes an abuse of discretion.
In particular, the guardian ad litem notes that much of the evidence submitted to the court indicated that appellant did not present a suitable placement option. Some of the evidence revealed: (1) that appellant and her husband have criminal records; (2) that appellant had previously attempted to obtain custody of another of Veronica Dyal's children, but was rebuffed by the State of Florida; (3) that appellant's oldest son began to live on his own when he was fifteen years old; (4) that appellant had not raised Veronica Dyal because Florida authorities had removed Veronica from appellant's custody due to appellant's former husband's acts of sexual abuse; and (5) that appellant did not regain custody of Veronica during Veronica's minority. In view of the evidence adduced at trial, the guardian ad litem asserts that the trial court could justifiably conclude that appellant's unstable relationship and appellant's previous difficulties in raising her own children eliminates appellant as a viable placement option.
In the case sub judice, we find that the trial court had before it sufficient competent, credible evidence to support its judgment. Further, we cannot characterize the trial court's judgment as arbitrary, unreasonable, or capricious. While we acknowledge that appellant loves her grandson and has expressed her sincere desire to participate in his upbringing, we cannot say that the trial court's judgment constitutes an abuse of discretion. Again, we find ample evidence in the record to support the trial court's determination.
Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J.: Concurs in Judgment Opinion
Evans, J.: Concurs in Judgment Only
 _________________________________ Peter B. Abele, Presiding Judge
[1] A complete discussion of the underlying facts surrounding the motion for permanent custody, which centers on the natural mother's ability to care for Kenneth Dyal, can be found in In re Dyal, Hocking App. No. 01CA12, unreported. In the case sub judice, the issue involves the trial court's denial of appellant's motion to obtain custody of Kenneth Dyal (appellant's grandson).
[2] The trial court also found that Kenneth could not be placed with his natural father, as his natural father did not participate in the proceedings and as his father has expressed no interest in Kenneth.