DECISION.
Appellants, Reverend James Bradford and Mamie Brown, appeal from the judgment of the Hamilton County Juvenile Court denying their petitions for custody of Demarcus and Demoray Wilkenson ("the twins") and awarding permanent custody to Hamilton County Job and Family Services ("HCJFS"). For the following reasons, we affirm the judgment below.
On February 12, 1999, the trial court adjudicated the twins neglected and awarded HCJFS temporary custody. HCJFS placed the twins in foster care with a family able to care for their extensive medical needs. (Both children were born prematurely and suffered from multiple complications due to drug exposure during the pregnancy.) On July 15, 1999, HCJFS moved to modify the order of temporary custody to one for permanent custody, as the foster parents had indicated a desire to adopt the twins. But a hearing on this motion was continued in order to pursue placement of the children with several relatives who had expressed an interest in having the twins live with them.
On January 3, 2000, the trial court placed the twins with their uncle and aunt, Reverend Bradford and his wife, Theola. Five months later, the children were removed from the Bradfords' home, and HCJFS renewed its motion for permanent custody. Prior to the dispositional hearing, the Bradfords, as well as the twins' grandmother, Mamie Brown, filed petitions for custody of the children. Following a hearing on the motion and the petitions, the magistrate denied the Bradfords' and Brown's petitions for custody. Only Reverend Bradford and Brown filed objections to the decision. The trial court found that although Reverend Bradford and Brown each were sincere in their desire to care for the children, the evidence demonstrated a family unit that was "often in chaos," and the court therefore held that the children's best interests would be served by awarding permanent custody to HCJFS. Timely appeals by Reverend Bradford, bringing forth three assignments of error, and Brown, bringing forth one assignment of error, have been filed in this court. For purposes of this decision, we have consolidated the two appeals.
Because Brown's single assignment of error is similar to Reverend Bradford's second assignment of error, we address them together. Both appellants essentially contest the sufficiency of the evidence supporting the trial court's decision to deny their petitions for custody for the twins. We are unpersuaded.
Pursuant to R.C. 2151.353(A)(3), when considering a permanent-custody motion, the juvenile court has the discretion to award legal custody to either parent or to any person who has filed a petition for legal custody. We note that the statute does not require a juvenile court to consider placing the children with a relative prior to granting the permanent-custody request of an agency. Accordingly, a juvenile court is not required to find by clear and convincing evidence that a relative is an unsuitable placement option prior to granting the permanent-custody request. "Relatives seeking the placement of the child are not afforded the same presumptive rights that a natural parent receives as a matter of law."[1] Rather, the juvenile court is vested with discretion to determine what placement option is in the child's best interest.[2]
Thus, an appellate court will not reverse an award of legal custody unless the trial court has abused its discretion.[3] An abuse of discretion is more than an error of law or judgment; it is a decision that is unreasonable, arbitrary, or unconscionable.[4] If the court's decision regarding a child's best interest is not supported by competent, credible evidence, then it is unreasonable and may be reversed.
R.C. 2151.414(D) provides a non-exclusive list of factors for a court to consider when determining the child's best interest, including the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
The record demonstrates that the trial court considered these factors.
 In March 2000, while the twins were living with the Bradfords, Reverend Bradford was removed from the home after an allegation of sexual abuse was made against him involving one of his biological daughters. This allegation was later found to be unsubstantiated, and Reverend Bradford was allowed to move back into the home. Due to this allegation, however, HCJFS began a more thorough investigation into the ability of the Bradfords to care for the twins. There was testimony in the record that the task of caring for her five biological children, her two adoptive children, and the twins while her husband was out of the home had overwhelmed Mrs. Bradford, and that she was unable to adequately care for all the children. As a result, she was then in therapy once a week for continuing emotional/mental issues. Although Reverend Bradford testified at the permanent-commitment hearing that he would be able to care for the twins since he was back in the home, he stated that Mrs. Bradford had been the primary caretaker for all the children.
Pia Spaulding, a caseworker for HCJFS, testified that while the twins were in the Bradfords' care, during the extended visits in December 1999 and in the early months of 2000, there was some concern that the twins' medicine was not being properly administered. She further testified that the Bradfords were missing or were late for the twins' speech-, occupational-, and physical-therapy appointments. Additionally, the record shows that the Bradfords' difficulty in caring for three other children in their home could have potentially distracted them from the care of the twins, who have special medical needs. One daughter is currently under protective supervision and attends therapy once a week, and the Bradfords' two adoptive children, who have displayed emotional and behavioral problems, have been removed from the home and are currently in foster care. Reunification between the two adopted children and the Bradford family is in progress, but it will require both adoptive children to attend individual therapy and the Bradford family to participate in counseling. The Bradford family was previously involved in family therapy early in 1999 as part of post-adoption services through HCJFS; however, the therapist cancelled these sessions because the family was not actively participating. Finally, there was testimony that the Bradford children were either absent from school or tardy numerous times during the 1999-2000 school year.
Brown, the grandmother who was also seeking custody of the twins, testified that she would have liked the twins placed with the Bradfords, but if that was not possible, then she wanted to have custody. HCJFS considered placing the twins with Brown in September 1999, but the agency decided against it because she was already caring for five of her grandchildren, all under the age of eight. Although Brown was retired, she testified that she felt overwhelmed at times with caring for the children that already lived with her. The Kentucky Cabinet, an agency equivalent to HCJFS, removed two of the children under her care for a short period because Brown was allowing her daughter, Dawn Wilkenson, to stay in her home, an action that was prohibited by the Kentucky agency. Further, Brown did not have experience caring for the twins and their medical needs. During visitation with the twins, Brown did not assume a caregiving role, choosing instead to interact with the adults present.
Robyn Cambron, the guardian ad litem for the twins, recommended that HCJFS be awarded permanent custody so that the foster parents could adopt the twins. The twins, two years old, had lived with the foster parents, who had experience in dealing with special-needs children, for approximately nineteen months. The foster parents expressed an interest in adopting the twins, and they had previously adopted three special-needs children. By all indications, the twins have thrived with the foster parents.
Based on the record before us, we conclude that there was competent, credible evidence to support a finding that, although the Bradfords and Brown loved the twins, it was in the best interests of the twins for HCJFS to be awarded custody so that adoption proceedings could begin. Neither appellant has shown that the trial court failed to consider a relevant factor or that it considered an improper factor in determining what was in the best interests of the twins. Thus, we are unable to say that the trial court abused its discretion in denying Brown's and Reverend Bradford's petitions for custody. Accordingly, Brown's sole assignment of error and Reverend Bradford's second assignment of error are overruled.
In his first assignment of error, Reverend Bradford contends that the trial court erred by not following the legislative mandate to keep the family unit together and by not evaluating his ability, separate from his wife's ability, to parent the children. We disagree.
The juvenile court made a strong effort to keep an extended family unit together, although, as we have already noted, the court was not required to consider placement with a relative prior to awarding permanent custody to HCJFS. Here, the court had considered placement of the twins with the Bradfords and with Brown and found that, despite the good intentions of the appellants, theirs were not suitable homes for the twins due to their special medical needs. Additionally, the court was under no obligation to evaluate Reverend Bradford's ability to parent, separate from his wife's ability, when the two resided together and would have both been parenting the children. Furthermore, the court's decision denying Bradford's petition for custody was based on the state of the household when Reverend Bradford was parenting there, not solely on the activities that occurred while he was out of the home from May 2000 to June 2000. Accordingly, we overrule his first assignment of error.
In his third assignment of error, Reverend Bradford contends that his due-process rights were violated because a hearing on HCJFS's motion for permanent custody was not heard within one hundred twenty days from the date it was filed. If Reverend Bradford believed that his due-process rights had been violated, that issue should have been raised in the trial court. It is well established that issues not presented for consideration in the trial court will not be entertained by an appellate court.[5]
Accordingly, Reverend Bradford's third assignment of error is overruled, and the judgment of the juvenile court is affirmed.
Sundermann and Shannon, JJ., concur.
Raymond E. Shannon, retired from the First Appellate District, sitting by assignment.
[1] In re Dyal (Aug. 9, 2001), Hocking App. No. 01CA11, unreported.
[2] In Re Patterson (1999), 134 Ohio App.3d 119, 730 N.E.2d 439.
[3] See In re Nice (2001), 141 Ohio App.3d 445, 751 N.E.2d 552.
[4] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140.
[5] Foran v. Fisher Foods, Inc. (1985), 17 Ohio St.3d 193, 194,478 N.E.2d 998, 999.