JOURNAL ENTRY and OPINION
The juvenile division of the court of common pleas terminated the parental rights of Robert and Lisa Sutton, parents of six boys, granting permanent custody of the boys to the Cuyahoga County Department of Children and Family Services ("the county"). The sole issue in this appeal is whether the court's decision is against the manifest weight of the evidence. We have expedited our decision in this appeal as required by App.R. 7(C).
We will summarize the court's findings of fact in narrative form along with other relevant facts taken from the record. The family has been involved with the county since 1986. The mother's oldest child, an eighteen-year-old and not a party to this case, has been in the custody of his maternal aunt since he was six months old.
The children who are the subject of this case were removed from the home in December 1998. At the time of the permanent custody hearing, they ranged in age from thirteen to two years old. Four of the children have been diagnosed with attention deficit/hyperactivity disorder. One of the boys was placed in an institutional setting after attempting suicide. The county cited to allegations of domestic violence against one of the children as justification for the removal, as well as more specific parenting issues like lack of hygiene, inability to address behavioral problems and housekeeping issues related to the presence of mice and roaches in the family residence. In April 1999, the parents admitted all of these allegations of neglect.
The county implemented a case plan that called for the parents to address issues relating to parenting. To that end, the parents were to attend family counseling to learn how to maintain a safe and sanitary home environment, and to implement appropriate discipline for the boys.
The mother made some progress with the case plan, but set back her cause after pleading guilty to a charge of interference with custody to one of her sons who had been in foster care. Despite this setback, the parties agreed that two of the boys would return to the family home by November 1999, two more would return in December 1999, and the remaining two would return in January 2000. To assist the parents in reintegrating the boys into the family home, the county arranged for a family preservation worker to assist the family for a total of twelve weeks. Four of the boys did return to the home, but the remaining two who were scheduled to be returned in January 2000 did not return because of their continuing behavioral and emotional problems.
In March 2000, a county social worker noticed bruises on two of the boys. Two of the children told the social worker that the bruises were inflicted by their father, who they said had kicked them. Another child had a cut on his face caused by an object that the mother had meant to throw at the father. Another boy had bite marks on his leg from another sibling. The children also told the social worker that the parents had engaged in acts of domestic violence and that the father had struck the children with a broom. The social workers found the house in a filthy condition. Roaches were observed in the refrigerator along with open cans of food.
The parents presented several witnesses who testified to the parents' commitment to their children. One of those witnesses was a pediatric nurse who had provided the children with primary health care since 1987. The nurse testified to the bond that the parents had with the children and gave her opinion that granting permanent custody to the county would not be in the best interests of the children.
Based on this information, the court made the following findings of fact: although the parents have received services from the county, they have failed to benefit from those services and pose a threat to the health and safety of the children; the childrens' behavior has improved while in foster care; the parents have displayed an inability to provide a safe, healthy and sanitary permanent home for the children; the parents have displayed inappropriate parenting skills as they are unable to redirect the children and are unable or unwilling to control the active and negative behaviors of the children; and the parents have engaged in acts of domestic violence in front of the children.
The court went on to find that there are no appropriate relatives available to care for the children. Although a maternal aunt had expressed an interest in taking the children in, the court rejected the aunt as a viable alternative to permanent custody because the county had taken permanent custody of two of the aunt's children and the aunt's sixteen-year-old daughter was pregnant at the time.
Based on these findings of fact, the court concluded as a matter of law that the county had proven by clear and convincing evidence that the children could not be placed with either parent within a reasonable amount of time and that placing the children in the permanent custody of the county would be in their best interest. The court went on to find that the county had proven by clear and convincing evidence that it made reasonable efforts to prevent the childrens' removal.
The sole assignment of error complains that the court's judgment is against the manifest weight of the evidence.
When terminating parental rights and granting permanent custody of a child who is neither abandoned nor orphaned to a state agency, the court must find by clear and convincing evidence that: (1) permanent custody to the agency is in the best interest of the child; and (2) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414; In re William S. (1996),75 Ohio St.3d 95, 99; In re Patterson (1999), 134 Ohio App.3d 119. Although the allegations of a complaint for permanent custody must be proven by clear and convincing evidence, our review of judgments under that standard is nonetheless based on the familiar appellate review standard of competent, credible evidence. C.E. Morris Co. v. FoleyConstr. (1978), 54 Ohio St.2d 279.
The court's decision to grant permanent custody of the children to the county is supported by competent, credible evidence. The parents had been actively involved with the county since 1987. Although they showed marginal compliance with case plans calling for parenting classes, the parents seemed unable to put this education to practical use. The evidence showed that the parents continued to engage in acts of domestic violence against each other, they were unable to control their childrens' behavior, and failed to provide a sufficiently safe and sanitary household. These failures resulted despite extraordinary assistance from the county in the form of an aide worker who spent twelve weeks with the family after the children were reunited with the parents in late 1999.
The parents' primary argument is that the county failed to present any evidence from witnesses who had personal knowledge of the circumstances surrounding the family, instead pointing to her witnesses, particularly the nurse practitioner, who they claimed did have this knowledge.
We do not discount the testimony given by the nurse practitioner, but we must acknowledge that she saw the children in a clinical setting, far removed from the drudgeries of day-to-day family life. In fact, none of the parents' witnesses claimed to have seen the children in their home environment.
On the other hand, it is beyond argument that the social worker did have personal knowledge of the conditions inside the home that led to the parents admitting the allegations of neglect. She visited the house many times and saw first-hand what the conditions inside the house were. Her access to the house and children permitted her to identify the telltale signs of abuse and initiate proceedings to have the children removed. None of the parents' witnesses were aware of this abuse, likely because they did not have the same access to the children that the social worker had.
The parents' repeated failure to provide a safe and sanitary home and their inability to control the behavior of these challenged children justified the court's decision to terminate their parental rights and award permanent custody to the county. That decision was supported by competent, credible evidence in the record. The assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellants its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court — Juvenile Court Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J., and JAMES J. SWEENEY, J., CONCUR.