DECISION AND JOURNAL ENTRY
{¶ 1} Appellants, Rasheeda Hopkins and Willie Smith, appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights to their minor child, T.S., and placed the child in the permanent custody of Summit County Children Services Board ("CSB"). We affirm.
 I. {¶ 2} Hopkins and Smith are the natural parents of T.S., who was born December 20, 1998. T.S. was removed from the home by CSB in August 1999 following an incident of domestic violence between Hopkins and Smith. Smith also had a prior conviction for domestic violence against Hopkins. T.S. was adjudicated dependent and placed in the temporary custody of CSB and CSB later moved for permanent custody. On August 2, 2001, the trial court granted CSB permanent custody of T.S. Hopkins appealed to this Court and the judgment was reversed on appeal because CSB had failed to prove by clear and convincing evidence that permanent custody was in the best interest of T.S. See In re Smith (Jan. 2, 2002), 9th Dist. No. 20711.[1]
 {¶ 3} After this case was remanded to the trial court, CSB filed a new complaint, alleging that T.S. was a dependent child. On February 20, 2002, T.S. was adjudicated a dependent child pursuant to a stipulation by both parents. On October 4, 2002, CSB moved for permanent custody of T.S. Smith also moved for legal custody of T.S. Following a hearing on both motions, the trial court terminated parental rights and placed T.S. in the permanent custody of CSB.
 {¶ 4} Hopkins and Smith appeal. Smith raises three assignments of error that will be consolidated for ease of review. Although Hopkins filed a brief, she failed to raise or argue any separate assignments of error but instead "incorporate[d] by reference" Smith's assigned errors and arguments. Because Smith challenges only the termination of his own parental rights, we will confine our review to whether the trial court erred in terminating Smith's parental rights.
 II. First Assignment of Error
"The trial court erred and abused its discretion by granting permanent custody where the best interests of the child indicated that legal custody to appellant (father) should have been granted."
 Second Assignment of Error
"The trial court erred by finding that permanent custody was supported by clear and convincing evidence."
 Third Assignment of Error
"The trial court erred in granting permanent custody where such an award was against the manifest weight of the evidence."
 {¶ 5} We will address the assignments of error together because they are interrelated. Smith contends that the trial court erred in granting CSB permanent custody of T.S. rather than placing the child in his legal custody. The trial court was not required to rule out the option of legal custody to Smith, however, before awarding permanent custody of T.S. to CSB. Although the trial court has the discretion to award legal custody to either parent or any other person who files a motion for legal custody, a request for legal custody "does not alter what a court considers in determining permanent custody." In rePatterson (1999), 134 Ohio App.3d 119, 129-130, citing In the Matter ofMastin (Dec. 17, 1997), 9th Dist Nos. 97CA006743 and 97CA006746 and In reDye (Apr. 19, 1995), 9th Dist. Nos. 16927 and 16932. Our review will focus on whether the trial court's decision to award permanent custody of T.S. to CSB was supported by the evidence.
 {¶ 6} When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In re Ozmun (Apr. 14, 1999), 9th Dist. No. 18983. In determining whether a criminal conviction is against the manifest weight of the evidence:
"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
 {¶ 7} State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175. Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." Karches v. Cincinnati (1988),38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment." Id.
 {¶ 8} Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least twelve months of the prior twenty-two months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95,99.
 {¶ 9} The trial court found that the first prong of the permanent custody test was satisfied because T.S. had been in the temporary custody of CSB for more than twelve of the twenty-two months prior to the hearing. Smith has not challenged that finding. Instead, he focuses his argument on the best interest prong of the test.
 {¶ 10} When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must:
 {¶ 11} "[C]onsider all relevant factors, including, but not limited to, the following:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C. 2151.414(D)(1)-(4).[2]
 {¶ 12} CSB's evidence of the interaction and interrelationship of Smith and T.S. focused, in large part, on the lack of involvement that Smith has had in the life of T.S.T.S. was removed from the home when she was eight months old. For the first two years that T.S. was in CSB custody, prior to the first appeal, Smith had virtually no involvement in her life. Although he lived in this area at the time of her removal from the home, he later chose to move to Chicago to get his life together. He did not visit with T.S. or work toward reunification and he did not even attend the first permanent custody hearing. He also was not a party to the first appeal. Because Hopkins had been making progress toward reunification and was able to prevail on appeal, Smith was given a second chance to involve himself in the life of T.S. He continued to reside in Chicago, however, and eventually got married to another woman and started a new family with her. He visited with T.S. only when court hearings were scheduled. Consequently, during the two years prior to the second permanent custody hearing, Smith visited T.S. only a handful of times, and not even on a monthly basis. He had not visited with T.S. for more than four months prior to the permanent custody hearing and, at another point in time during the case plan, there was a gap of eight months between visits. T.S. has had virtually no interaction with Smith's new family. She met Smith's wife and youngest child only once, during the most recent visit, which was four months before the hearing.
 {¶ 13} The CSB caseworker testified that if Smith had hoped to develop a bond with T.S., more frequent visitation was required and, in fact, weekly visitation was permitted and encouraged. It was CSB's position that visitation between Smith and T.S. had not been frequent enough to establish and maintain a meaningful parent-child relationship. Rather, the agency opined that a parent should be a "constant in a child's life, someone that can be relied upon," with contact that "would be relatively regular."
 {¶ 14} The caseworker did admit during his testimony that the distance from Chicago to Akron could pose an obstacle to weekly visitation. The caseworker further noted, however, that other means of contact with T.S. such as phone calls or letters were an option but Smith had not pursued any of those alternate means of contact. Moreover, it was repeatedly stressed by CSB witnesses and the guardian ad litem that Smith voluntarily removed himself from this area while his daughter was in CSB custody. Even Smith admitted at the hearing that the lack of frequency of his visits with T.S. had been determined by him, not CSB.
 {¶ 15} CSB's evidence further demonstrated that, although Smith wanted legal custody of T.S., he knew little about her day-to-day life. He did not know if or where she attended school, what therapy or techniques were used to treat her developmental delays, or where she would attend school if she were to move to Chicago.
 {¶ 16} At the time of the hearing, T.S. had resided in the same foster home for over three years. The caseworker testified that he had seen T.S. with the foster family, that "[s]he seems secure in their presence," that he had observed them being affectionate with each other, and that the foster family seemed to have a close and caring relationship with T.S. The foster family had ensured that T.S. received special education for her developmental delay.
 {¶ 17} The guardian ad litem spoke on behalf of T.S., who was less than five years old at the time of the hearing. The guardian ad litem indicated that permanent custody was in the best interest of T.S., stressing that the child had been in CSB custody for over four years and the parents had not shown significant progress toward reunification.
 {¶ 18} T.S. had been in the temporary custody of CSB for over four years, practically her entire life. We stressed in the first appeal in this case that "the time period in and of itself cannot be held against the parent without considering the reasons for it and the implications that it had on this child." In re Smith, supra. The reason for more than two years of this period of temporary custody was the fact that Hopkins was making progress toward reunification and CSB failed to establish at the first permanent custody hearing that permanent custody was in the best interest of T.S. Smith had little involvement in the case at that time but instead chose to move to Chicago and start a new life and family there. As stressed above, during the period after the appeal, Smith attempted to involve himself on a somewhat minimal basis, but he has essentially missed four years of the life of T.S. and hardly knows her.
 {¶ 19} CSB further established that T.S. is in need of a permanent placement but neither parent is a suitable placement, nor are any of their relatives with whom T.S. can be placed. Consequently, a permanent placement could only be achieved by granting permanent custody to CSB.
 {¶ 20} Given the evidence presented at the permanent custody hearing, the trial court did not err in concluding that permanent custody to CSB was in the best interest of T.S. The first, second, and third assignments of error are overruled.
 III. {¶ 21} The assignments of error are overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
Slaby, P.J., and Baird, J. concur.
[1] Smith was not a party to that appeal.
[2] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case.