JOURNAL ENTRY and OPINION
{¶ 1} Appellant, W.T., Sr., appeals the trial court's grant of permanent custody of three minor children, A.D., W.T., and N.W. (collectively "the children") to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). Finding that appellant has no standing to challenge the permanent custody of A.D., we dismiss the appeal as to A.D. Finding no merit to the rest of the appeal, we affirm the decision of the trial court.
 {¶ 2} In May 2003, CCDCFS took emergency custody of the children after their mother ("Mother") tested positive for cocaine at N.W.'s birth. W.T., Sr. ("Father") is the father of W.T. and the alleged father of N.W. The children were adjudicated abused and neglected, and the court granted CCDCFS temporary custody. CCDCFS placed the children together in a foster home and developed a case plan for Mother and Father, which included drug treatment for both parents and parenting classes for Mother. All three children have special needs.
 {¶ 3} In July 2004, CCDCFS filed a motion to modify temporary custody to permanent custody. The motion was based on both parents being deemed unsuitable to permanently care for the children. Mother did not complete drug treatment and was incarcerated for felonious assault. Father failed to complete his case plan or visit the children and did not have suitable housing. The matter proceeded to trial, at which the court heard testimony from an agency social worker, Mother, and the paternal grandmother, C.T. ("Grandmother"). The children's guardian ad litem was present at the trial to submit his report and recommendation but did not testify. In November 2004, the court awarded CCDCFS permanent custody of the children.
 {¶ 4} Father now appeals, raising two assignments of error. We first note that Father is not the parent of A.D. Juv.R. 2(Y) defines which persons are parties to an action in juvenile court. The child's natural parents are parties to the proceedings, but the rule is silent as to putative parents. Some Ohio courts have held that putative parents may have standing in cases where the person was named as a party to the motion for permanent custody. In Re Phillips, Butler App. No. CA2003-03-062, 2003-Ohio-5107. In this case, Father does not allege to be the putative father of A.D. and he was named as a party only for W.T. and N.W.A.D.'s father is deceased. Therefore, Father has no standing to challenge the trial court's decision as to A.D. See In re E.C., Summit App. No. 22355, 2005-Ohio-1633. Accordingly, the appeal as to A.D. is dismissed. We will address the merits of Father's appeal regarding the other two children.
 {¶ 5} In his first assignment of error, Father argues that the trial court deprived him of his right to cross-examine the guardian ad litem. We disagree.
 {¶ 6} When reviewing a trial court's judgment on child custody cases, the appropriate standard of review is whether the trial court abused its discretion. Masters v. Masters (1994), 69 Ohio St.3d 83, 630 N.E.2d 665. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Miller v. Miller (1988), 37 Ohio St.3d 71, 73,523 N.E.2d 846. In Miller, the court stated that:
"[T]he discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." Supra at 74, citing Trickey v.Trickey (1952), 158 Ohio St. 9, 13, 106 N.E.2d 772.
 {¶ 7} In addition, it is well established that if a party fails to object at the trial court level, that party waives all but plain error. We recently held in In re S.B., Cuyahoga App. No. 85560, 2005-Ohio-3163, that a mother waived all but plain error on appeal when she failed to object to the trial court's use of the guardian ad litem's report. Similarly, in this case, Father never objected to the submission of the report or to the trial court's reliance on the report. Most importantly, Father never sought to cross-examine the guardian ad litem. The failure to assert a right is not the same as being prevented from asserting a right. In re La. B., Cuyahoga App. No. 81981, 2003-Ohio-6852 at ¶ 26, citing In re Kutcher, Belmont App. No. 02 BE 58, 2003-Ohio-1235.
 {¶ 8} Father relies on the Ohio Supreme Court's decision In reHoffman, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, in which the court held that a trial court's refusal to allow cross-examination of the guardian ad litem concerning her report constituted reversible error. In the instant case, there was no refusal by the court to allow Father to cross-examine the guardian ad litem. The record shows that Father's counsel declined to call any witnesses and never asked to question the guardian ad litem about his report. When the trial court informed the parties that it would review the report before making a final decision on permanent custody, Father failed to object to the use of the report or request to question the guardian ad litem. Therefore, by his failure to object to the trial court's use of the report and his failure to request to cross-examine the guardian ad litem, he has waived all but plain error on appeal. See In re S.B., supra; In re Ch. O., Cuyahoga App. No. 84943, 2005-Ohio-1013.
 {¶ 9} We do not find any manifest injustice to warrant the invocation of the plain error doctrine. We cannot say that the trial court's decision would have been different had the guardian ad litem been cross-examined. Moreover, there was ample evidence to support the trial court's decision absent the guardian ad litem's report. The trial court did not refuse to allow Father to cross-examine the guardian ad litem; therefore, the court did not abuse its discretion.
 {¶ 10} Accordingly, the first assignment of error is overruled.
 {¶ 11} In his second assignment of error, Father argues that the trial court committed reversible error by not considering placement with a relative prior to ordering permanent custody. We disagree.
 {¶ 12} The trial court is not required to consider placing the children with a relative prior to granting permanent custody to CCDCFS. This court has previously held that the willingness of a relative to care for a child does not alter what the court must consider in determining permanent custody. In re Benavides (May 3, 2001), Cuyahoga App. No. 78204, citing In re Patterson (1999), 134 Ohio App.3d 119,730 N.E.2d 439. And, although the court must find by clear and convincing evidence that the parents are not suitable placement options, the court is not required to invoke the same standard with regard to a grandparent. Patterson, supra at 130.
 {¶ 13} If Grandmother wished to seek custody of her grandchildren, she was required to follow the protocol set forth in R.C. 2151.353(A)(3), which states in pertinent part:
"[I]f a child is adjudicated an abused, neglected, or dependent child, the court may * * * award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child."
 {¶ 14} There is no indication in the record that Grandmother filed such a motion, and because she failed to appropriately request legal custody, the trial court was without the authority to grant her custody. See In re Th. W., Cuyahoga App. Nos. 85241, 85278, 2005-Ohio-2852. Father argues that CCDCFS made no attempt to help Grandmother become an appropriate placement for the children. R.C. 2153.353 mandates that a person interested in placement file a motion for legal custody prior to the permanent custody hearing. The time to argue for CCDCFS' assistance is prior to the permanent custody hearing. There is nothing that would lead us to conclude that Grandmother is now committed to taking care of the children when she has previously shown no commitment to the children's welfare.
 {¶ 15} Even if Grandmother had followed proper procedure and filed a motion for legal custody of the children, there is ample evidence in the record that placement with her would not be in the best interest of the children. The social worker testified that from 1995 until 2003, CCDCFS received twelve referrals for abuse, neglect, and dependency against Grandmother. Allegations in eight of those referrals were substantiated.[1] Additionally, Grandmother allowed Father and her other son to live with her. Father abused drugs, and her other son had convictions for drug possession and drug trafficking.
 {¶ 16} A review of Grandmother's trial testimony supports CCDCFS' conclusion that she would not be a suitable placement. Grandmother admitted to recently chaining her daughter to a bed to prevent her running away, and three other adults and one child already reside in her four-bedroom home. Grandmother works full time and does not have adequate day care plans for the children. She admitted at trial that none of the adults currently living in the house would be her first choice to watch the children. Grandmother claimed that she would learn how to take care of the children's special needs, but she was unable to identify what those needs were.
 {¶ 17} Simply put, because Grandmother did not file a motion for legal custody, the trial court was precluded from awarding custody of the children to her. It would be judicially unwise to allow a person who has never expressed an interest in the children before to argue for custody at the permanent custody hearing, thereby requiring CCDCFS to begin the process anew to determine suitability. Moreover, CCDCFS had already determined Grandmother was unsuitable. Most importantly, it would be unfair to the children, who have spent most of their lives in foster care, to further delay their permanent placement.
 {¶ 18} Therefore, because Grandmother never filed a motion for legal custody and because CCDCFS is not required to consider relative placement prior to seeking permanent custody, the second assignment of error is overruled.
 {¶ 19} Accordingly, the judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court Division of the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
GALLAGHER, J. and McMONAGLE, J. CONCUR
[1] CCDCFS makes determinations in cases that allegations of abuse, neglect, or dependency of a child are either "substantiated," "indicated," or "unsubstantiated."