JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant E.C. (mother) appeals the trial court's grant of permanent custody of her four children to the Cuyahoga County Department of Children and Family Services ("county"), arguing that the court instead should have placed them in a Planned Permanent Living Arrangement (PPLA).
{¶ 2} The children, who at the time of this appellate review are thirteen, ten, eight, and six-and-a-half years old, were removed from their mother's custody in February of 1998.[1] Although the youngest was reunited with her mother for two and a half months, she was again removed after witnessing her mother's boyfriend physically harm the mother. During the time this child was briefly reunited with her mother, the family participated in the West Side Community Mental Health and Family Preservation program. In this program, a case worker spent two months working with the mother, going to the home and spending two hours a day four or five days a week. The mother missed a number of appointments with the worker because her live-in boyfriend would fail to give her phone messages concerning the appointments.
{¶ 3} The mother is diagnosed as mildly mentally retarded. The family preservation worker found that although he extended the program for two extra weeks to accommodate the mother's mental limitations, she still could not learn the proper parenting skills and failed to recognize her children's daily needs.
{¶ 4} In addition to the work done by the Family Preservation worker, the county also prepared a case plan for the mother which required her to maintain safe and stable housing, ensure that her own basic needs were met, demonstrate appropriate parenting skills when visiting the children[2], and attend domestic violence counseling. She did not complete the domestic violence program.
{¶ 5} Although the mother made a good faith effort to comply with the case plan, because of her mental limitations, she did not have the capacity to comply. The social worker testified that the mother could recite the information taught in the parenting class, but could not apply the concepts to real life situations.[3] Unfortunately, the Cuyahoga County Division of Mental Retardation and Development Disabilities ("MRDD") determined that she was functioning too highly to qualify for its services, although it did find that she has functional limitations in two areas: economic self-sufficiency and self-direction. The MRDD eligibility coordinator testified that he had questions concerning the mother's capacity to protect herself, especially from abusive relationships.
{¶ 6} At a hearing in April of 2000, the court adjudicated the children as dependent and continued temporary custody with the county. The children have special educational and medical needs: one has seizures, another is hyperactive and takes medication, a third is learning disabled and in counseling for sexual abuse, and the fourth is learning disabled. They have been placed together in the same foster home since their removal from the mother's home, except for the short period of time that the youngest was reunited with her mother.
{¶ 7} In November of 2000, the court held the dispositional hearing, granting permanent custody to the county. At the hearings, the social worker, the MRDD worker, the domestic violence worker and the psychologist all testified that the mother did not have the capacity to properly protect and care for her children. Nonetheless, the social worker, family preservation worker, mother's Guardian ad litem, and the children's Guardian ad litem all agreed that the children were bonded with the mother. The trial court decided, however, that because the children were in need of a permanent legally secure placement, permanent custody for the county was in their best interest.
{¶ 8} Mother timely appealed, stating two assignments of error. Because the two assignments of error address the same issue, they will be addressed together. They state:
 {¶ 9} I. THE JUVENILE COURT'S DECISION TO GRANT THE MOTION FOR PERMANENT CUSTODY WAS AN ABUSE OF DISCRETION AS THE DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.
 {¶ 10} II. THE JUVENILE COURT ERRED WHEN IT FAILED TO RENDER A DISPOSITIONAL ORDER TO PLACE THE CHILDREN IN A PLANNED PERMANENT LIVING ARRANGEMENT, WHEN THE EVIDENCE ADDUCED AT TRIAL SATISFIED THE STATUTORY REQUIREMENTS AND CONDITIONS OF SUCH AN ORDER.
{¶ 11} Although the mother argues that the award of permanent custody to the county is an error, she does not claim that the children should have been returned to her custody. In fact, the mother does not dispute that the overwhelming evidence showed that she is not able to care for her children: She states in her brief that, "reunifying the children with [her] is an * * * unworkable option." Appellant's brief at 9. She contends, rather, that the court should have placed the children in a Permanent Planned Living Arrangement (PPLA) instead of severing her relationship with the children. She states that "[t]he evidence is undisputed that [the mother's] cognitive limitations have not inhibited the strong affection the children feel for her and the recognition they have of her as their mother. The evidence was consistent that the children would suffer a significant detriment should they be separated from their mother." Id. The mother further points out that the Guardianad litem recommended that the children be placed in a PPLA precisely because of their bond with their mother.
{¶ 12} An appellate court will reverse the ruling of the trial court in a custody proceeding only if it finds that the trial court abused its discretion. "'[A] court exercising Juvenile Court jurisdiction is invested with very broad discretion, and, unless that power is abused, a reviewing court is not warranted in disturbing its judgment.'"In re Pieper Children (1993), 85 Ohio App.3d 318, 330, quoting In reAnteau (1941), 67 Ohio App. 117, 119. An abuse of discretion requires more than an error of law and judgment. Rather, the trial court's attitude must have been unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
{¶ 13} This court has previously addressed the standard of review in child custody cases:
 {¶ 14} In order to justify termination of parental rights and award permanent custody of a child who is neither abandoned nor orphaned to a public children's services agency, a juvenile court must find by clear and convincing evidence that: (1) the grant of permanent custody to the agency is in the best interest of the child; and (2) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. In re Patterson, 134 Ohio App.3d 119, 730 N.E.2d 439, 1999 Ohio App. LEXIS 4025 (1999), citing In re William S. (1996), 75 Ohio St.3d 95, 99, 661 N.E.2d 738. Clear and convincing evidence is "evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." In re King,
1999 Ohio App. LEXIS 3737 (Aug. 11, 1999), Adams App. No. 99CA671, unreported, citing In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368, 481 N.E.2d 613; Cross v. Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus. See also Cincinnati Bar Assn. v. Massengale (1991), 58 Ohio St.3d 121, 122, 568 N.E.2d 1222.
 {¶ 15} "The standard of review for weight of the evidence issues, even where the burden of proof is `clear and convincing,' retains its focus upon the existence of some competent, credible evidence." Hawn v. Pleasant,
1999 Ohio App. LEXIS 2578 (May 28, 1999), Scioto App. No. 98CA2595, unreported, citing State v. Schiebel
(1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. In other words, when reviewing awards of permanent custody to public children services agencies, judgments supported by some competent, credible evidence must be affirmed. In re Rowe,
1998 Ohio App. LEXIS 351 (Jan. 30, 1998), Scioto App. No. 97CA2529, unreported, citing Jones v. Lucas County Children Services Board (1988), 46 Ohio App.3d 85, 86, 546 N.E.2d 471.
State v. Thomas (Mar. 9, 2000), Cuyahoga App. Nos. 75330, 75331, 
75332, unreported, 2000 Ohio App. LEXIS 885, at *9-10. If the record shows some competent, credible evidence supporting the trial court's grant of permanent custody to the county, therefore, we must affirm that court's decision, regardless of the weight we might have chosen to put on the evidence.
{¶ 16} The court's authority to grant permanent custody of a dependant child is stated in R.C. 2151.414(B):
 {¶ 17} (B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 18} (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
{¶ 19} * * *
 {¶ 20} (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
{¶ 21} * * *
 {¶ 22} (D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353
[2151.35.3] or division (C) of section 2151.415
[2151.41.5] of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 23} (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 24} (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 25} (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 26} (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 27} (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. (Emphasis added.)
{¶ 28} In the case at bar the children had been in county custody for almost three years at the time of the dispositional hearing. They, therefore, clearly qualify for permanent placement under that requirement.
{¶ 29} Nonetheless, the mother argues that permanent custody instead of a PPLA is not in the children's best interest. A planned permanent living arrangement (PPLA) is an alternative form of custody in which the child is placed in a foster home or institution with the intention that the child will remain in that home or institution until he is no longer in the county child services system. A PPLA does not sever the parental bonds as permanent custody does, but it also does not provide the child with a legally permanent placement. The statute permits the use of a PPLA only in cases which fit one of three criteria: first, the child must have serious needs which preclude him from a placement outside residential or institutional care; second, the parents must have serious problems which prevent the parents from caring for the children yet have a strong bond with them and adoption is not in the best interest of the children; or third, the child must be sixteen years old or over and unwilling or unable to take a permanent placement.
{¶ 30} A planned permanent living arrangement is authorized in R.C. 2151.35.3, which states in pertinent part:
 {¶ 31} (A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
{¶ 32} * * *
 {¶ 33} (5) Place the child in a planned permanent living arrangement with a public children services agency or private child placing agency, if a public children services agency or private child placing agency requests the court to place the child in a planned permanent living arrangement and if the court finds, by clear and convincing evidence, that a planned permanent living arrangement is in the best interest of the child and that one of the following exists:
 {¶ 34} (a) The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care.
 {¶ 35} (b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D) of section 2151.414 [2151.41.4] of the Revised Code, and the child retains a significant and positive relationship with a parent or relative.
 {¶ 36} (c) The child is sixteen years of age or older, has been counseled on the permanent placement options available to the child, is unwilling to accept or unable to adapt to a permanent placement, and is in an agency program preparing the child for independent living. [Emphasis added.]
{¶ 37} Although R.C. 2151.415(F) allows any party or the Guardianad litem to file a motion requesting a hearing or the court sua sponte to call a hearing and grant a PPLA if it considers it appropriate, no one in this case filed a motion requesting a PPLA. Further, The county did not have the option of requesting a PPLA because R.C. 2151.415, which authorizes the county to request a PPLA, states:
 {¶ 38} (A) Except for cases in which a motion for permanent custody described in division (D)(1) of section 2151.413 of the Revised Code is required to be made, a public services agency * * * that has been given temporary custody of a child * * * shall file a motion with the court * * * requesting that any of the following orders of disposition of the child be issued by the court:
{¶ 39} * * *
 {¶ 40} (5) An order that the child be placed in a planned permanent living arrangement * * *.
(Emphasis added.) The exception noted in the statute applies here. R.C. 2151.413(D) states in pertinent part:
 {¶ 41} * * * if a child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, the agency with custody shall file a motion requesting permanent custody of the child. (Emphasis added.)
{¶ 42} Because the children had been in county custody for over twelve months in the previous twenty-two month period, the county had no other option but to request permanent custody.
{¶ 43} This court has previously held that "[w]hereupon hearing a motion requesting permanent custody of a child a court decides to deny the motion, the court may proceed in accordance with R.C. 2151.415 and make any disposition listed in that statute, including a PPLA." In re:Rayshawn Campbell (Oct. 12, 2000), Cuyahoga App. Nos. 77552 77603, unreported, 2000 Ohio App. LEXIS 4787, at 14,[4] citing In re McDaniel
(Feb. 11, 1993), Adams App. No. 92 CA 539, unreported, 1993 Ohio App. LEXIS 806. See, also, In the Matter of Melissa Moody (June 28, 2001), Athens App. Nos. 01CA11 01CA14, unreported, 2001 Ohio App. LEXIS 3100;In the Matter of: Raymond Zimmerman (Aug. 15, 2001). Allen App. No. 1-01-13, unreported, 2001 Ohio App. LEXIS 3573.
{¶ 44} Section (F) is not controlled by section (A). Other sections of this statute specifically state their applicability is triggered by the filing of a motion under section (A). For example, section (B) begins "[u]pon the filing of a motion pursuant to section (A) of this section * * *." Sections (C), (D), and (E) similarly rely on the existence of a hearing scheduled pursuant to section (A). Section (F), on the other hand, is triggered by a specially scheduled hearing "to determine whether any order issued pursuant to this section should be modified or terminated or whether any other dispositional order set forth in divisions (A)(1) to (5) of this section should be issued." R.C.2151.415(F). A hearing scheduled under section (F) is not the same as a hearing for permanent custody in section (A). Additionally, the hearing in the case at bar was scheduled pursuant to R.C. 2151.413(D)(1) and therefore this statute is not applicable.
{¶ 45} The trial court carefully considered the evidence and even questioned each witness at the hearing to clarify the evidence. "In reviewing a trial court's determination of a disposition, an appellate court is to accord the trial court's discretion `the utmost respect.'"Campbell at 14, quoting Reynolds v. Goll (1996), 75 Ohio St.3d 121, 124. The trial court stated in its journal entry that the "[c]hildren are in need of a legally secure placement that can" "best be achieved by a grant of permanent custody to CCDCFS." Journal Entry March 5, 2001. The court specifically noted in its entry that it considered the children's relationship with their parents and siblings but still determined "by clear and convincing evidence that a grant of Permanent Custody is in the BEST INTEREST of the children." Id. (Capitals in original.)
{¶ 46} The trial court faced a difficult decision and gave it serious consideration, which is reflected in its thorough questioning of the witnesses. In the end, the court based its decision on credible evidence and clearly kept the best interest of the children in mind. We find no abuse of discretion.
{¶ 47} Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Division of Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and ANNE L. KILBANE, J., CONCUR.
[1] The four children are by three different fathers. Only one father has established paternity or made any effort to remain in contact with his child. Although he participated in the adjudicatory and dispositional hearings, he is not a party to this appeal.
[2] The social worker found that mother did not have toothbrushes, toothpaste, or blankets in the winter for the children. Mother also would watch R-rated movies with the children in the room because she did not understand what "R" stood for.
[3] When one of the boys was diagnosed with a seizure disorder, despite the social worker's detailed explanation of his safety needs, mother allowed him to climb on a jungle gym while she was at least fifty meters away.
[4] In Campbell, the lower court denied permanent custody and then proceeded to grant PPLA. Those are not the circumstances here. In the case at bar, mother is asking the appellate court to grant PPLA. Neither the mother nor the county ever requested or even discussed PPLA as an alternative in the trial court.