[Cite as *In re J.T.*, 2013-Ohio-2096.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 99143**

---

# IN RE: J.T., ET AL.
# Minor Children

[Appeal By P.F., Legal Custodian]

---

## JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD 10918126, AD 10918127, and AD 10918128

**BEFORE:** E.T. Gallagher, J., Jones, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** May 23, 2013

**ATTORNEY FOR APPELLANT**

Britta M. Barthol
P.O. Box 218
Northfield, Ohio   44067


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Rachel Eisenberg
Assistant Prosecuting Attorney
C.C.D.C.F.S.
8111 Quincy Avenue
Cleveland, Ohio 44104


**ATTORNEY FOR CHILDREN**

Christina Lowder
15614 Detroit Avenue
Suite 7
Lakewood, Ohio   44107


**ATTORNEY FOR MOTHER**

Mark Witt
6209 Barton Road
North Olmsted, Ohio   44070


**ATTORNEY FOR FATHER**

Melinda Annandale
20033 Detroit Road
Annex F1-1

Rocky River, Ohio   44116 continued...
**GUARDIAN AD LITEM FOR CHILDREN**

Carla Golubovic
P.O. Box 29127
Parma, Ohio   44129


**GUARDIAN AD LITEM FOR MOTHER**

Thomas Kozel
P.O. Box 534
North Olmsted, Ohio   44070

EILEEN T. GALLAGHER, J.:

{¶1} Appellant, P.F., great aunt of R.T., T.T., and J.T. (collectively "the children"), appeals a judgment of the juvenile court that awarded permanent custody of the children to the Cuyahoga County Department of Children and Family Services ("CCDCFS") and denied her motion to terminate temporary custody. We find no merit to the appeal and affirm.

{¶2} On April 2, 2008, CCDCFS received temporary custody of R.T. and T.T. At that time, the children's father and mother were serving five- and seven-year prison terms, respectively, for child endangering. While incarcerated, mother gave birth to a third child, J.T., on April 8, 2008. CCDCFS also received temporary custody of J.T., and all three children were placed in foster care.

{¶3} In July 2009, P.F. received legal custody of the children with protective supervision by CCDCFS. In April 2010, the children were temporarily removed from P.F.'s home when marks and bruises were discovered on T.T.'s body. CCDCFS subsequently filed a complaint for abuse, dependency, and permanent custody. Following a hearing, a magistrate determined there was no probable cause for removal of the children and ordered the children be returned to P.F. Although it was alleged that one of the two male tenants living in the basement of P.F.'s home inflicted the injuries, the agency was unable to determine who actually caused them.

**{¶4}** Two months later, in June 2010, CCDCFS received a report that R.T. had a significant bruise on her face. Silvia Jackson ("Jackson"), a social worker with CCDCFS, investigated the allegations and discovered that R.T. had a contusion in the shape of a shoe print on her cheek. The marks on R.T.'s face included the lines from the pattern of grooves on the sole of a shoe. R.T. told social workers at the agency that P.F. hit her in the face with a shoe. As a result of this injury, the court granted emergency custody of the children to CCDCFS in July 2010, and the children were adjudicated abused on February 9, 2011. The children were placed with a foster family with the goal of eventual reunification.

**{¶5}** P.F. visited the children on a weekly basis while she worked on a case plan. At first, the visits were supervised, then became unsupervised in July 2011. However, the children's foster mother reported that when she arrived to pick up the children after an unsupervised visit, T.T. informed her that P.F. had hit him in the head and choked him. R.T. corroborated T.T.'s statement and stated that P.F. hit T.T. in the head with a closed fist. When social workers from the agency investigated the incident, P.F. admitted that she hit T.T. in the head, but stated that she used an "open hand." Following this incident, weekly supervised visits resumed and home visits were terminated.

**{¶6}** On February 28, 2012, after reunification efforts were unsuccessful, CCDCFS filed a motion to modify temporary custody to permanent custody. P.F. simultaneously filed a motion to terminate temporary custody, and the court held a hearing on the motions. Several witnesses testified on P.F.'s behalf. Three of these

witnesses conceded that P.F.'s brother served a one-year prison sentence for sexual battery after he forced his step-daughter, who was 14 years old at the time, to perform oral sex. Despite his admitted history of child sexual abuse and his classification as a sexually oriented offender, they testified that he did not pose a threat to the children even though he was living in P.F.'s basement at the time of the hearing.

{¶7} Susan Garcia ("Garcia"), the caseworker assigned to this case, testified that P.F. has bonded with the children. However, in her opinion, P.F. is unable to properly care for the children because they have been injured while in her custody at least two times and because P.F. is unable to meet all of the children's needs. Several witnesses mentioned that P.F. has difficulty calming the children down and disciplining them. Garcia also testified that she believes P.F. is likely to hit the children again in the future. In Garcia's opinion, awarding permanent custody to CCDCFS would be in the children's best interests because they have lived most of their lives in temporary custody and they need permanency. Although Jackson testified that P.F. might be capable of caring for one of the children, Garcia said it is in the children's best interests to stay together if possible.

{¶8} Carla Golubovic ("Golubovic"), the children's guardian ad litem, testified that she also believes it is in the children's best interests to be placed into the permanent custody of CCDCFS. She acknowledged P.F.'s sincere love for the children, but explained that P.F. does not have the financial resources necessary to support them and is incapable of properly disciplining the children, who have some behavioral issues.

**{¶9}** Following the hearing, the court entered judgment denying P.F.'s motion to terminate temporary custody to CCDCFS and granted the agency's motion to modify temporary custody to permanent custody. P.F. now appeals and raises two assignments of error.

**{¶10}** In her first assignment of error, P.F. argues the trial court's decision to award permanent custody to CCDCFS was against the manifest weight of the evidence and was not supported by clear and convincing evidence. In her second assignment of error, P.F. argues that the trial court's judgment denying her motion to terminate temporary custody was against the manifest weight of the evidence. We discuss these two assigned errors together because they are interrelated.

**{¶11}** The termination of parental rights is governed by R.C. 2151.414. *In re M.H.*, 8th Dist. No. 80620, 2002-Ohio-2968, ¶ 22. R.C. 2151.414 sets forth a two-part test courts must apply when deciding whether to award permanent custody to a public services agency. R.C. 2151.414 requires the court to find, by clear and convincing evidence, that (1) granting permanent custody of the child to the agency is in the best interest of the child under R.C. 2151.414(D), and (2) either the child (a) cannot be placed with either parent within a reasonable period of time or should not be placed with either parent if any one of the factors in R.C. 2151.414(E) are present; (b) is abandoned; (c) is orphaned and no relatives are able to take permanent custody of the child; or (d) has been in the temporary custody of one or more public or private children services agencies for

12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1). *In re J.M-R.*, 8th Dist. No. 98902, 2013-Ohio-1560, ¶ 26.

{¶12} Clear and convincing evidence is

> that measure or degree of proof which is more than a mere "preponderance of the evidence" but not to the extent of such certainty required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

*In re Awkal*, 95 Ohio App.3d 309, 642 N.E.2d 424 (8th Dist.1994), fn. 2, citing *Lansdowne v. Beacon Journal Publishing Co.*, 32 Ohio St.3d 176, 512 N.E.2d 979 (1987). Therefore, an appellate court will not reverse a juvenile court's decision awarding permanent custody to an agency if the judgment is supported by clear and convincing evidence. *In re J.M-R.* at ¶ 26.

{¶13} The weight of the evidence concerns "'the inclination of the *greater amount of credible evidence*, offered at trial, to support one side of the issue rather than the other [and] indicates clearly to the [factfinder] that the party having the burden of proof will be entitled to their verdict.'" (Emphasis sic.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. When conducting a manifest weight review, the reviewing court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the

judgment must be reversed and a new trial ordered. *Eastley* at ¶ 20, citing *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001).

**{¶14}** However, the knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. *In re A.D.*, 8th Dist. No. 85648, 2005-Ohio-5441, ¶ 6. Therefore, the discretion that a trial court enjoys in custody matters should be afforded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. *Id.*

**{¶15}** In this case, both biological parents stipulated to the award of permanent custody to CCDCFS. Their voluntary relinquishment of their parental rights is clear and convincing evidence that both biological parents are unwilling to provide an adequate permanent home for the children. R.C. 2151.414(E)(4).

**{¶16}** At the time of the hearing, the children had been in the temporary custody of CCDCFS and living with a foster family for the past two years. (Tr. 15.) Therefore, pursuant to R.C. 2151.414(B)(1)(d), the court had discretion to award permanent custody to CCDCFS if there was clear and convincing evidence that permanent custody was in the children's best interests.[1]

---

[1] Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). However, relatives seeking custody of a child are not afforded the same presumptive rights that a natural parent receives. *In re A.C.,* 12th Dist. No. CA2006-12-105, 2007-Ohio-3350. Because the focus is on the best interest of the child, a juvenile court is not required to find by clear and convincing evidence that a relative is unsuitable before granting

**{¶17}** In making the "best interest" determination, R.C. 2151.414(D)(1) directs the trial court to consider the following non-exclusive factors:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶18}** This court has consistently held that only one of the factors set forth in R.C. 2151.414(D) needs to be resolved in favor of the award of permanent custody in order for the court to award permanent custody to a proper agency. *In re J.M-R.*, 8th Dist. No. 98902, 2013-Ohio-1560, ¶ 37, citing *In re Z.T.*, 8th Dist. No. 88009, 2007-Ohio-827, ¶ 56.

---

permanent custody to a proper agency. *In re Davis*, 8th Dist. No. 77124, 2000 Ohio App. LEXIS 4776 (Oct. 12, 2000).

**{¶19}** Here, Jackson, Garcia, and the guardian ad litem testified that permanent custody is in the children's best interests because they have been in temporary custody for more than half their lives and they need a permanent, stable home. Several witnesses testified that P.F. has difficulty disciplining the children properly, and the children had been injured at least twice while in her custody. P.F. has admitted hitting the children.

**{¶20}** Garcia testified that she observed the children at supervised visits and that they were very excited to see their foster father when he arrived to take them home. During supervised visits, the children frequently asked when "daddy" was coming to pick them up, and "Can we check if daddy's there?" Several witnesses described a strong bond between the children and their foster family.

**{¶21}** P.F. argues the trial court's decision was not supported by clear and convincing evidence because she completed all the requirements of her case plan, which included parenting classes, anger management classes, and psychiatric assessment. However, a parent's or relative's successful completion of the terms of a case plan is not dispositive on the issue of reunification. In *In re C.C.*, 187 Ohio App.3d 365, 374, 2010-Ohio-780, 932 N.E.2d 360 (8th Dist.), this court explained:

> The ultimate question under R.C. 2151.414(A)(1) is whether the parent has substantially remedied the conditions that caused the child's removal. A parent can successfully complete the terms of a case plan yet not substantially remedy the conditions that caused the children to be removed — the case plan is simply a means to a goal, but not the goal itself. Hence, the courts have held that the successful completion of case plan requirements does not preclude a grant of permanent custody to a social services agency.

(Citations omitted.) *Id.*

{¶22} P.F. admitted that she has hit the children. Although P.F. attended two parenting classes and an anger management class, there is no evidence that these classes benefitted P.F. in any meaningful way. Garcia testified that she has not seen any change in P.F.'s parenting skills since she completed the classes. She also believes that P.F. is likely to hit the children again in the future if they are in her custody. Moreover, she allowed a convicted sex offender, who was convicted of sexual battery of his minor step-daughter, to live in her home where the children would be living if the court were to award her legal custody of the children. She made no effort to remove him from the home in an effort to provide a safe environment for the children.

{¶23} Finally, there is clear and convincing evidence that P.F. is financially unable to care for the children. P.F. testified that she does not work, but receives government assistance and leases the basement of the house. She receives $1,007 per month in social security and $200 worth of food stamps. Her rent is $1,400 per month, of which the tenants pay $400 and P.F. pays $1000. P.F. testified that after she pays the rent, she has $7 remaining for the month. Seven dollars per month is not enough to provide for the basic needs of three children.

{¶24} Therefore, after a careful review, we find the court's decision that permanent custody is in the best interests of the children was supported by clear and convincing evidence and by the manifest weight of the evidence. Despite completing the requirements of her case plan, P.F. failed to make any progress and failed to see how her

inability to provide a stable home for the children was prohibiting reunification. She also lacks the financial resources to provide for the children.

**{¶25}** Accordingly, we overrule both assignments of error.

**{¶26}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR