[Cite as *In re A.C.*, 2013-Ohio-4377.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
Nos.   99764, 99765, 99766, 99767, 99768,
and 99769

---

# IN RE:   A.C., JR., ET AL.
# Minor Children

[Appeals By J.S., Mother]

---

## JUDGMENT:
AFFIRMED

---

Civil Appeals from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD 10901509, AD 10901510, AD 10901511,
AD 10901512, AD 10901513, and AD 11906275

**BEFORE:**   Boyle, P.J., Blackmon, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:**   October 3, 2013

**ATTORNEY FOR APPELLANT MOTHER**

Betty C. Farley
17316 Dorchester Drive
Cleveland, Ohio   44119

**ATTORNEYS FOR APPELLEE, C.C.D.C.F.S.**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Tammy L. Semanco
Assistant Prosecuting Attorney
C.C.D.C.F.S.
4261 Fulton Parkway
Cleveland, Ohio   44144

**GUARDIAN AD LITEM**

Thomas B. Robinson
P.O. Box 690
Newbury, Ohio   44065

MARY J. BOYLE, P.J.:

{¶1} Appellant-mother, J.S. ("mother"), appeals the juvenile court's decision granting permanent custody to the Cuyahoga County Department of Children and Family Services ("CCDCFS" or "the agency") of her six minor children, A.S. (born March 25, 2002), S.S. (born September 19, 2003), Ja.S. (born November 11, 2004), Je.S. (born July 2, 2006), A.C. (born May 27, 2009), and A'r.C. (born April 4, 2011). She raises the following two assignments of error:

> 1. The Cuyahoga County Department of Children and Family Services [CCDCFS] failed to show by clear and convincing evidence that permanent custody is in the minor children's best interests.
>
> 2. [CCDCFS] failed to show by clear and convincing evidence that appellant had not remedied the conditions which caused the removal of the children from the home.

{¶2} Finding no merit to the appeal, we affirm.

## Procedural History and Facts

{¶3} CCDCFS opened a case involving mother and her four oldest minor children in August 2008, after receiving reports of domestic violence and substance abuse. Mother voluntarily agreed to participate in a case plan to help her with these issues, which included receiving a substance abuse assessment, domestic violence counseling, and a psychological evaluation at the Cuyahoga County Juvenile Court diagnostic clinic. At that time, two of her children were staying with relatives in Alabama.

{¶4} Mother completed the substance abuse assessment but failed to appear for her scheduled appointments for her psychological evaluation. She also failed to follow through with domestic violence counseling.

{¶5} In the fall of 2009, the children A.S. and Ja.S. returned from Alabama to mother's care, following the birth of A.C. CCDCFS also referred the father of A.C., "Doe,"[1] — who was allegedly engaging in acts of domestic violence around the children in mother's home — for anger management and a substance abuse assessment. Doe failed to participate.

{¶6} After learning that A.S. had been raped by Doe's oldest son and having continued concerns over mother's alcohol use and domestic violence in the home, CCDCFS moved for protective supervision of the children and filed a complaint alleging abuse of A.S. and neglect and dependency of all five children. Mother and Doe admitted to the allegations of the amended complaint, and the court adjudicated A.S. abused and all five children neglected and dependent. The court further granted CCDCFS protective supervision and approved the mother's case plan for obtaining services to address the following critical issues: (1) substance abuse, (2) parenting, (3) employment, (4) mental health, and (5) domestic violence.

{¶7} On March 25, 2011, CCDCFS filed a motion to modify protective supervision to temporary custody, following an incident of domestic violence involving

---

[1] Because he shares the same initials as his sons, we use "Doe" to avoid confusion.

Doe choking mother in front of the children at six o'clock in the morning. A.S. had run across the street to call the police for assistance. The mother was approximately eight months pregnant at the time. The children were placed in the emergency custody of CCDCFS the next day.

{¶8} Ten days later, on April 4, 2011, A'r.C. was born (Doe's second son) and almost immediately placed in the emergency custody of CCDCFS. In July 2011, A'r.C. was adjudicated dependent and placed in the temporary custody of CCDCFS. In September 2011, CCDCFS obtained temporary custody over the other five children.

{¶9} On February 21, 2012, CCDCFS filed a motion to modify temporary custody to permanent custody for all six children. On November 26, 2012, prior to the hearing on the agency's motion for permanent custody, the children's guardian ad litem ("GAL") filed his report and recommendations. The GAL detailed the progress of each child since his or her placement in foster care, as well as highlighting their continued need for specialized services. According to the GAL, mother has failed to complete her case plan services or remedy the conditions that caused the removal of the children. The GAL recommended that the court grant permanent custody of the children to the agency.

{¶10} On February 14, 2013, the trial court held a full hearing on the agency's motion for permanent custody. The agency presented two witnesses: Pamela Karwoski-Hillebrecht ("Karwoski"), the CCDCFS social worker assigned to mother's case, and Amanda Miller, The Bair Foundation case manager, who provided services to the children.

**{¶11}** Karwoski testified at length as to the services referred to mother and mother's failure to either complete or benefit from the services.

*Substance Abuse*

**{¶12}** Karwoski testified that mother's case plan included receiving services to address her substance abuse (alcohol) problem. According to Karwoski, mother intermittently complied with referrals for services. In March 2012, mother was referred to the Hitchcock Center for Women inpatient services after being terminated from Recovery Resources' intensive outpatient program due to relapsing. She received inpatient services from July through October 2012 and then was referred to intensive outpatient services again. Mother failed to enroll until three weeks before the hearing. Karwoski further testified that mother has not complied with the agency's request to attend weekly AA meetings and provide documentation.

*Domestic Violence*

**{¶13}** Although mother completed recommended classes addressing domestic violence, Karwoski indicated that incidents of domestic violence continued to occur in mother's home. She further testified that mother did not comply with her referral for domestic violence counseling.

*Mental Health*

**{¶14}** Karwoski testified that mother had admitted to having suicidal thoughts, starting in 2008. The agency ultimately referred mother to the Northeast Ohio Neighborhood Health Center ("NEON") after mother refused to cooperate for a mental

health assessment with the court clinic. As part of her treatment through NEON, mother was prescribed medication for depression. Karwoski testified that mother failed to follow the doctor's recommendation for usage and would take the medication "only when she feels that * * * she needs it, and not take it on the weekends." Karwoski further testified that mother was hospitalized twice in 2012 for suicidal threats while she was receiving inpatient treatment. Following the hospitalizations, mother was referred to Connections mental health agency. Karwoski stated that mother has been meeting with her psychiatrist but missing several case management appointments. Karwoski further explained that mother refused to discuss her mental health treatment with her.

*Employment and Basic Needs*

{¶15} Karwoski testified that mother is not employed but receives Section 8 funding. Mother moved to a new location in 2012 but neglected to move the children's beds, which were previously provided by CCDCFS. According to Karwoski, mother's new home is unsuitable because it has three small bedrooms that would not accommodate six children. Karwoski explained that Ja.S. requires his own room due to his severe sexualized behaviors. (For this same reason and the protection of his siblings, Ja.S., was placed in a separate foster family from the other five children.)

{¶16} Karwoski further testified that while the children were under mother's care, she struggled to provide appropriate clothing. According to Karwoski, the children's teachers had to provide shoes and winter coats for them because mother was unable to do so.

*Parenting*

**{¶17}** Karwoski testified as to her concerns of mother's ability to parent the children. Although mother eventually completed parenting classes recommended by the agency, she still struggled greatly in dealing with the children, who all (except for the baby) have severe emotional and behavioral issues. Karwoski testified that mother failed to adequately supervise the children during their scheduled visits. Mother would also allow A.S., the oldest, to continue "to parent the children at the visits, feeding them, holding them when they're crying," despite being told repeatedly that A.S. should not have any parenting duties. This restriction was placed in part due to A.S.'s sex abuse assessment, but mother repeatedly ignored it.

**{¶18}** Karwoski also testified as to her concern over mother's lack of understanding or acknowledgment of the five older children's severe behavioral and emotional problems. Karwoski stated: "When I mention them to her, she expresses that there's nothing wrong with them, that they're fine, that we're making this up, despite the fact that these behaviors are observed during the visits."

**{¶19}** She further testified that mother clearly could not handle all six children during their supervised visits. Mother "was observed slapping one of the children, threatening to whoop their behind, as well as cussing out the foster parents, cussing out other people who were coming in, not watching the kids." As a result of the chaotic visits, the agency decided to separate the visits for the oldest three and the youngest three. The biweekly visits ultimately ceased and were changed to monthly visits because "mom

missed 50 percent of her visits for the year 2012." Karwoski testified that mother's "missed" visits "had a serious impact" on the children, especially Ja.S. She further testified that the children exhibit concerning behaviors after a visit with mother. For example, "Ja.S.'s school reports the day after the visit he becomes intensely angry, he becomes angry * * * aggressive, he lashes out."

*Children's Progress*

{¶20} Karwoski testified that A.S., S.S., Je.S, A.C., and A'r.C. were residing with the same foster family in Medley, Ohio and progressing.[2] All of these children, except for A'r.C. — who was never under mother's care — were receiving extensive services, including individual counseling and occupational and speech therapy. All of these children also had IEPs through their school. Overall, the children were functioning much better. Karwoski further testified that the foster family desired to adopt all five children. Karwoski also stated that "[t]hey would love to adopt Ja.S., but because of his behaviors, they know that they can't."

{¶21} As for Ja.S., he was removed from the foster parents and siblings after his school initiated his hospitalization at Belmont Pines, an inpatient adolescent facility for children with severe behavioral and emotional problems. Belmont Pines opined that Ja.S., who was only 5 years old, "needs to be in a line of sight at all times and he's high risk for sexually acting out." He was subsequently placed in a therapeutic foster home in

---

[2] We note that the parties indicated at oral argument that A.S. is now living with another foster family.

South Euclid, Ohio in August 2011. Karwoski testified that Ja.S. has been exhibiting inconsistent behavior in his foster placement but receives individual counseling and has an IEP through his school. She further testified that the agency is working on finding Ja.S. an adoptive family near the other children in Medley and that the agency has been having Ja.S. visit his siblings in Medley.

{¶22} According to Karwoski, the granting of permanent custody to the agency serves the best interest of all the children because mother cannot meet her own needs, let alone the needs of all the children.

{¶23} Amanda Miller, case manager and licensed social worker at The Bair Foundation, also testified, detailing the progress of the five children placed together. Miller first became involved with all the children when they were placed in foster care. As part of her job, she regularly visits the foster family and works with them to help manage the children's behavior and obtain the necessary services for the children. She is currently working with all the children, except Ja.S. Miller described the relationship between the children and foster parents as follows:

> All of the kids seem to interact well with the foster parents. Both [A'r.C.] and [A.C.] are very attached to the foster parents. When the foster parents go away on vacation, last year the kids were excited when they came back. They hug them, kiss them.
>
> [Je.S.] also is very attached to them. She has a very close relationship with the foster parents.
>
> The same with [S.S]. [S.S.] is very positive with them. They all seem to have a positive interaction.

[A.S.] is struggling a bit, but she even does have that attachment to them even though she's very loyal to mom as well.

**{¶24}** Miller further opined that the foster parents, unlike mother, are able to manage the children's behaviors. She further stated that the foster parents, who live in a seven-bedroom home, can provide a permanent home for the five children.

**{¶25}** The mother and Doe opposed the motion but did not testify at the hearing. The children were also separately represented by counsel, who also opposed the agency's motion. The GAL, however, strongly urged the trial court to grant the motion. In addition to his report filed, the GAL addressed the court and stated the following on the record:

> I didn't follow up with the questioning of the social worker because I want to protect these children. * * * These children have so many things, so many challenges that they need to deal with. This case has been open for plenty long enough for the family to address any of the things that they need to have done up to this point. They have not done any of that, your Honor. These children are doing well now because of the foster parents, because of the intervention of the agency, and not because of the parents. Putting them back in the parents' home would be devastating to children that are trying to climb out of the things that happened to them. There is no option except permanent custody in the children's best interest, your Honor.

**{¶26}** On March 12, 2013, the trial court granted permanent custody of the children to the agency and issued a detailed three-page journal entry.

**{¶27}** From this decision, mother appeals.

Custody Determination

**{¶28}** In her first assignment of error, mother argues that the agency failed to show by clear and convincing evidence that permanent custody is in the children's best interests. We disagree.

**{¶29}** The termination of parental rights is governed by R.C. 2151.414. *In re M.H.*, 8th Dist. Cuyahoga No. 80620, 2002-Ohio-2968, ¶ 22. A trial court must apply a two-prong test under this statute, measured by clear and convincing evidence. *Id.* R.C. 2151.414 establishes a two-part test for courts to apply when determining a motion for permanent custody to a public services agency. The statute requires the court to find, by clear and convincing evidence, that (1) granting permanent custody of the child to the agency is in the best interest of the child under R.C. 2151.414(D), and (2) either the child (a) cannot be placed with either parent within a reasonable period of time or should not be placed with either parent if any one of the factors in R.C. 2151.414(E) are present; (b) is abandoned; (c) is orphaned and no relatives are able to take permanent custody of the child; or (d) has been in the temporary custody of one or more public or private children services agencies for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1).

**{¶30}** Clear and convincing evidence is

that measure or degree of proof which is more than a mere "preponderance of the evidence" but not to the extent of such certainty required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

*In re Awkal*, 95 Ohio App.3d 309, 642 N.E.2d 424 (8th Dist.1994), fn. 2, citing *Lansdowne v. Beacon Journal Publishing Co.*, 32 Ohio St.3d 176, 512 N.E.2d 979 (1987).

{¶31} "An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence." *In re Jacobs*, 11th Dist. Geauga  No. 99-G-2231, 2000 Ohio App. LEXIS 3859, *11 (Aug. 25, 2000), citing *In re Taylor,* 11th Dist. Ashtabula No. 97-A-0046, 1999 Ohio App. LEXIS 2620 (June 11, 1999).

*A.  Best Interest Determination*

{¶32} When determining whether a grant of permanent custody is in the children's best interest, the juvenile court must consider the following factors under R.C. 2151.414(D)(1):

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) apply in relation to
>
> the parents and child.

{¶33} Mother claims that the trial judge did not properly consider all of the factors set forth in R.C. 2151.414(D)(1) because the record contains some evidence that mother is bonded with the children, and A.S. expressed a desire to live with her. While we acknowledge that Karwoski testified that the children had "a bond" with the mother and that A.S. felt very loyal to her mother, the record reveals that the children likewise had a very strong bond with their foster parents.

{¶34} We find no basis to mother's claim that the trial court did not consider all the best interest factors. Indeed, in finding that the award of permanent custody to the agency served the children's best interest, the juvenile court expressly identified the enumerated factors pursuant to R.C. 2151.414(D)(1) and found that "[t]hese factors taken together weigh heavily in favor of permanent custody." Specifically, the court noted the following:

> The court notes only A.S. and possibly S.S. have indicated a wish to return to their mother. All other factors weigh in favor of permanent custody. * * * These children have been in care for almost two years. While the court finds that there is more than ample evidence to terminate the parental rights based on safety and unfitness issues, the length of time these children have been involved with CCDCFS is a significant factor in it own right in the determination of what is in the children's best interest. * * * The foster parents wish to adopt these children, and the children are bonded to them.

{¶35} With respect to mother or any other person's ability to provide a legally secure placement for these children, the trial court further found:

> Despite five years of working with the family, there is clear and convincing evidence that these children would not be safe and adequately

cared for if they were returned to the mother's care. All of the children, except the youngest, who was never in the care of his parents, have severe behavioral and emotional special needs. * * * All of the children have made a tremendous amount of progress since coming into CCDCFS custody. * * * The court notes that the father of the two youngest, who attended trial [Doe], lives with his parents. He is a registered sex offender who perpetrated against a minor victim. His son raped A.S. These grandparents are not a suitable placement, and the father cannot be reunified with his children. Moreover, there is no motion for legal custody to a relative before this court.

{¶36} As for the other four children's fathers, the trial court found that they had all abandoned the children. Notably, none of the fathers, including Doe, have appealed the granting of permanent custody.

{¶37} Here, as exemplified in the testimony of Karwoski, Miller, and the GAL's report, the record contains clear and convincing evidence supporting the trial court's best interest determination. We find no merit to the first assignment of error and overrule it.

B. *Placement with Either Parent*

{¶38} In her second assignment of error, mother argues that agency failed to present competent, credible evidence to support the trial court's determination that mother had not remedied the conditions that caused the removal of her children.

{¶39} The trial court's determination of whether the child cannot or should not be placed with either parent is guided by R.C. 2151.414(E). This section sets forth 16

factors that the trial court may consider in its determination. It provides that if the trial court finds by clear and convincing evidence that any of the 16 factors exists, the court must enter a finding that the child cannot or should not be placed with either parent within a reasonable period of time. *In re D.J.*, 8th Dist. Cuyahoga No. 88646, 2007-Ohio-1974, _ 64.

{¶40} Relevant to this section, the trial court made the following findings:

> Following the placement of the children outside their house and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the children to be placed outside the home, the mother has failed continuously and repeatedly to substantially remedy the conditions causing the children to be removed from the home. [R.C. 2151.414(E)(1)]

> The mother and fathers have demonstrated a lack of commitment toward the children by failing to regularly support, visit, or communicate with the children when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for them. [R.C. 2151.414(E)(4)]

> The fathers have abandoned the child. [R.C. 2151.414(E)(10)]

{¶41} Mother claims that the she complied with her case plan as evidenced by her (1) ongoing treatment for substance abuse, (2) completion of a parenting class, and (3) obtaining of Section 8 housing. Based on this evidence, she contends that the trial court erred in not determining that the children should have been returned to her. We find mother's argument flawed for many reasons.

**{¶42}** First, the record overwhelmingly negates mother's claim that she successfully completed her case plan. At best, mother made some progress in some aspects of her case plan. Notably, mother's own argument fails to even address the mental health, domestic violence, or employment (basic needs) components of her case plan.

**{¶43}** Secondly, even if mother had completed her case plan — which she clearly did not in this case — this court has consistently recognized that "a parent's or relative's successful completion of the terms of a case plan is not dispositive on the issue of reunification." *In re J.T.*, 8th Dist. Cuyahoga No. 99143, 2013-Ohio-2096, ¶ 21, citing *In re C.C.*, 187 Ohio App.3d 365, 374, 2010-Ohio-780, 932 N.E.2d 360 (8th Dist.). Indeed, "[a] parent can successfully complete the terms of a case plan yet not substantially remedy the conditions that caused the children to be removed — the case plan is simply a means to a goal, but not the goal itself." *In re C.C.* at ¶ 25. Here, the record clearly and convincingly reveals that mother did not benefit from those aspects of the case plan that she had completed. Specifically, despite having finished a parenting class, mother continued to either inappropriately discipline the children during her visits or not supervise them at all. Likewise, although mother obtained Section 8 housing, she failed to obtain a house suitable for the children or acquire beds for the children.

**{¶44}** Finally, mother's argument completely ignores that the trial court also made a separate finding under R.C. 2151.414(E)(4) that alone would sufficiently justify its conclusion that the children cannot or should not be placed with mother. *See In re D.J.*, 8th Dist. Cuyahoga No. 88646, 2007-Ohio-1974, _ 64. Notably, mother does not even

challenge this finding. And given that mother missed 50 percent of the visits at one time, necessitating the change to only once a month, we find that this finding too is clearly and convincingly supported by the record.

**{¶45}** Mother's second assignment of error is overruled.

**{¶46}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

MARY J. BOYLE, PRESIDING JUDGE

PATRICIA ANN BLACKMON, J., and
EILEEN T. GALLAGHER, J., CONCUR