[Cite as *In re E.H.*, 2021-Ohio-2740.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                    |     |                              |
| ------------------ | --- | ---------------------------- |
|                    |     | JUDGES:                      |
| IN RE:             | :   | Hon. W. Scott Gwin, P.J.     |
| E.H. and           | :   | Hon. William B. Hoffman, J.  |
| C.H.               | :   | Hon. Patricia A. Delaney, J. |
|                    | :   |                              |
|                    | :   |                              |
|                    | :   |                              |
|                    | :   | Case No.    2021CA00017      |
|                    | :   |             2021CA00018      |
|                    | :   |                              |
|                    | :   | O P I N I O N                |


CHARACTER OF PROCEEDING:    Civil appeal from the Stark County Court of Common Pleas, Juvenile Division, Case Nos. 2019JCV01180 & 2019JCV01181


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    August 9, 2021


APPEARANCES:

For - Appellee

JAMES B. PHILLIPS
STARK COUNTY JFS
300 Market Avenue North
Canton, OH 44702

For - Appellant

TY GRAHAM
4450 Belden Village Street N.W.
Suite 703
Canton, OH  44718

*Gwin, P.J.,*

{¶1}    Appellant-father ["Father"] appeals the January 20, 2021 Judgment Entry of the Stark County Court of Common Pleas, Juvenile Court Division, which terminated his parental rights with respect to his minor children, E.H.[1] (b. Sept. 6, 2018) and C.H. (b. June 17, 2019) and granted permanent custody of the children to appellee, Stark County Department of Jobs and Family Services (hereinafter "SCJFS").

*Facts and Procedural History*

{¶2}    SCJFS had been working with the family since August of 2019 on a non-court basis to try and prevent the removal of the children. On November 25, 2019, SCJFS filed a complaint alleging the dependency and/or neglect of E.H. and C.H. Appellant is the biological father of E.H .and C.H. On November 25, 2019, the trial court found probable cause existed for SCJFS to be involved and placed the child into emergency temporary custody with SCJFS. An adjudicatory and disposition hearing was held February 11, 2020 and the court placed the children in the temporary custody of SCJFS. The court approved and adopted the case plan that had been filed.

{¶3}    Father filed a motion to change legal custody on March 24, 2020, which contained an ex-parte order that was mistakenly signed by the trial court. The trial court vacated that order on March 26, 2020.

{¶4}    At a dispositional review hearing that took place on May 22, 2020, the trial court indicated there were compelling reasons to preclude a request for permanent custody to the SCDFJS.

---

[1] See, OH ST Supp. R. 44(H) and 45(D) concerning the use of names of juveniles.

{¶5}   On July 8, 2020, Father filed a Motion to Change Legal Custody of the children. A hearing was scheduled for August 13, 2020.

{¶6}   On August 13, 2020, the SCDJFS filed Motions for Permanent Custody of both children, and a trial was set for November 2, 2020.

{¶7}   On October 21, 2020, Father's attorney filed a motion to withdraw as his counsel.

{¶8}   On October 23, 2020, the trial court reviewed the case.  The case plan review packet was approved and adopted. The trial court found that SCJFS had made reasonable efforts to finalize the permanency planning in effect, and maintained the status quo. The court also found that no compelling reasons existed to preclude a request for Permanent Custody to SCJFS.

{¶9}   On October 23, 2020, Father's counsel filed an amended motion to withdraw as counsel and also asked the Court to appoint new counsel for Father. On October 28, the Court permitted counsel to withdraw.  The trial court appointed counsel to represent Father.

{¶10}  Father's new trial counsel filed a motion to extend temporary custody and a motion to grant legal custody of the children to a third party on January 6, 2021.

{¶11}  Permanent custody proceedings began on January 14, 2021.

### *Permanent Custody Trial*

{¶12}  Caseworker Paige Horn testified that the children were originally placed in the temporary custody of the SCJFS on November 22, 2019 and had remained in the continuous temporary custody of the SCJFS since that date.[2]  Caseworker Horn testified

---

[2] The motion for permanent custody was filed on August 13, 2020. Thus from November 22, 2019 to and including August 13, 2020 is a period of 265 days. Before a public children-services agency or private

that the mother had disclosed that Father was very abusive. T. at 11.  Both mother and Father had domestic violence charges against them in the past. T. at 12.

{¶13}  The case plan requested that Father complete a drug and alcohol assessment through CommQuest, a parenting evaluation through Melymbrosia, maintain safe and stable housing and maintain steady employment. Father completed the initial CommQuest assessment in December of 2019 and was recommended to engage in group treatment. Father was contacted multiple times but never completed the group treatment. Father was discharged unsuccessfully from the program in March 2020.

{¶14}  Father has refused to submit to drug screens during the pendency of this case and refused to sign a release of information from CommQuest for any drug screen information. Father completed the parenting assessment through Melymbrosia, which recommended that he participate in domestic violence treatment or a domestic violence evaluation. Father has not completed either one of those recommendations.

{¶15}  Caseworker Horn testified that Father's demeanor was agitated, frustrated and attempting to intimate her. T. at 15. Concerns of threats were also present in her dealing with Father. Id.

{¶16}  Father did not complete his visits at the onset of the case. During the start of COVID-19 restrictions, Father was offered virtual visits and missed 10 of these visits. Father missed all but one of the virtual visits. T. at 15. Father further failed to appear for most in-person visits with the children.  At father's last visit, father got extremely frustrated

---

child-placing agency can move for permanent custody of a child on R.C. 2151.414(B)(1)(d) grounds, the child must have been in the temporary custody of an agency for at least 12 months of a consecutive 22–month period." *In re: C.W.*, 104 Ohio St.3d 163, 2004–Ohio–6411, 818 N.E.2d 1176 at paragraph one of the syllabus. When calculating this period, the court in *C.W.* cautioned, "the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12–month period set forth in R.C. 2151.414(B)(1)(d)." Id. at 167, 2004–Ohio–6411 at ¶ 26, 818 N.E.2d at 1180. *Accord, In re: N.C.*, 5th Dist. No. 2011-CA-00141, 2011-Ohio-6113, ¶32.

with the children crying and tried to end the visit. The caseworker talked him through it and he continued the visitation.

{¶17} Caseworker Horn testified that Father would not benefit from an extension of time to attempt to complete his case plan because there was nothing to indicate that he intended to complete his case plan requirements.  T. at 18.

{¶18} Caseworker Horn testified she was informed in January 2020, that A.C. and S.C. were interested in accepting placement of both of the children.  The couple are related to Father by marriage.  The couple served as baby-sitters for E.H.  while the parents attended to C.H. during his birth and hospitalization. They have never met C.H.

{¶19} The caseworker testified that A.C. informed the caseworker that they had been told by Father that he was being denied any visitation or contact with the children or any attempt to reunify. According to the caseworker, A.C. was unaware of the extent of C.H.'s disabilities and was concerned that since C.H. is not day-care eligible, she could not care for him.  The caseworker further testified that A.C. was also concerned that if given legal custody, Father would attempt to regain the children physically by force or intimidation. A.C. told the worker that if the children were safe and stable, she did not want to disrupt the children. Since February, 2020, the couple have not reached out to the worker to pursue placement.

{¶20} A.C. and S.C. testified during the permanent custody hearing. The couple reside in Canton, Stark County, Ohio, They have two children of their own and a comfortable four-bedroom home with a bath and one half. In preparation for the children, they have acquired a crib and toddler bed. A.C. testified that they are financially able to assume custody and believes that they are "quite capable" of caring for these children.

She testified that they have cared for S.C.'s mother who had cancer and required oxygen treatment. She testified that all she knows about C.H.'s condition is that he is on oxygen.

{¶21} The couple completed background checks in January 2020. While they have never met C.H., they have baby-sat for E.H. and had no problems caring for her. The couple's two children are anxious to have the children join the family. The couple have only met the children's mother once but they testified that they would follow any court directives regarding allowing access to the biological parents. They ceased contact with the caseworker when the ex parte order was vacated, but testified that they are "absolutely interested" in assuming custody of these children.

{¶22} Caseworker Horn testified E.H. is involved with physical therapy due to her motor delay and she was recently fitted for AFO articulated custom braces for her feet. She struggles, she is able to walk, she is able to get around and she is active. But she is consistently falling down so she was fitted for the braces. She does have podiatry appointments related to the braces and her walking. She has Help Me Grow involvement and also has general well child doctor visits. She does not have any significant medical concerns. She does not have any long-term diagnoses. T. at 29.

{¶23} C.H. was born at 25 weeks. He weighed 1.7 pounds when he was born. His list of diagnoses consists of extreme prematurity, infant apnea, congenial hypothyroidism, retinopathy of prematurity, chronic lung disease, and dysphasia, dependent. He is dependent on supplement oxygen. Respiratory insufficiency, spasticity, cerebral palsy and he further has left, middle cranial fossa arachnoid cyst. T. at 29-30. He has a team of fifteen doctors, and in-home nurses that come once a week. C.H. requires supplemental oxygen. C.H. needs someone watching him sleep, checking his breathing,

checking under his eyes for distress to see if the oxygen needs to be put back on. T. 30-31.

{¶24} The children's current caregiver is specially trained to care for C.H.'s needs and has raised her own child who suffered from Cerebral Palsy.

{¶25} The GAL presented a written report to the Court and recommended that permanent custody be granted to the SCDJFS.

{¶26} Father did not appear for the permanent custody hearing.

{¶27} On January 20, 2012, the trial court issued its findings of fact granting permanent custody of the children to SCDJFS and terminating the parental rights of Father. Specifically, the trial court found that, despite reasonable efforts by SCDJFS, the children could not and should not be placed with Father within a reasonable amount of time, and the grant of permanent custody was in the child's best interest.

*Assignments of Error*

{¶28} Father raises two Assignments of Error,

{¶29} "I. THE TRIAL COURT'S JUDGMENT THAT E.H. AND C.H. CANNOT BE PLACED WITH APPELLANT WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶30} II. THE TRIAL COURT'S JUDGMENT THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICENCY OF THE EVIDENCE."

*Law and analysis*

**Standard of Appellate Review**

{¶31} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), *quoting Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972). A parent's interest in the care, custody and management of his or her child is "fundamental." Id.; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599(1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." I*n re Smith,* 77 Ohio App.3d 1, 16, 601 N.E.2d 45(6th Dist. 1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id. An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1).

{¶32} The Ohio Supreme Court has delineated our standard of review as follows, "clear and convincing evidence" is "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986). In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954), the Supreme Court further cautioned,

>           The mere number of witnesses, who may support a claim of one or
> the other of the parties to an action, is not to be taken as a basis for resolving
> disputed facts.   The degree of proof required is determined by the

impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added). A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Adkins,* 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, 2006 WL 242557, ¶17.

### Requirements for Permanent Custody Awards

{¶33} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶34} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶35} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

### 1. Parental Placement within a Reasonable Time–R.C. 2151.414(B)(1)(a).

{¶36} The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151 .414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E)(1)-(15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. *See In re William S.*, 75 Ohio St.3d 95, 1996–Ohio–182, 661 N.E.2d 738; *In re Hurlow,* 4th Dist. Gallia No. 98 CA 6, 1997 WL 701328 (Sept. 21, 1998); *In re Butcher*, 4th Dist. Athens No. 1470, 1991 WL 62145(Apr. 10, 1991).

{¶37} R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the

Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

* * *

(16) Any other factor the court considers relevant.

{¶38} As set forth above, the trial court's findings are based upon competent credible evidence. The record includes the recommendation of the guardian ad litem for the child, and the testimony of the witnesses at trial. The trial court was in the best position to determine the credibility of the witnesses.

{¶39} Testimony established that both children have significant medical needs that Father has never addressed. Father missed visitation and made no effort to learn how to care for the medical needs of his children. Father refused to provide medical information releases, refused drug screening, domestic violence counseling, and refused to cooperate with the caseworker. Father did little if anything to work toward reunification with his children. Father has refused to disclose or discuss his living arrangements and whether he is gainfully employed. Father did not appear for the permanent custody hearing. There is nothing in the record of this case that suggest Father would suddenly begin to work toward completing his case plan if he were given additional time.

{¶40} In the case of *In re: Summerfield*, 5th Dist. Stark No. 2005CA00139, 2005-Ohio-5523, this court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

{¶41} Based upon the foregoing, as well as the entire record in this case, the court properly found E.H. and C.H. could not or should not be returned to Father within a reasonable time. Despite offering numerous services, Father was unable or unwilling to mitigate the concerns that led to the children's removal.

## 2.  The Best Interest of the Children

{¶42}  R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion.  These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply.  No one element is given greater weight or heightened significance.  *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816. R.C. 2151.414(D)(1) does not require a juvenile court to make specific findings regarding each best-interest factor listed in R.C. 2151.414(D)(1) or to include in its decision or judgment entry a written discussion of each of those factors.  *In re: A.M.,* Slip Opinion No. 2020-Ohio-5102, 2020WL6439610 (Nov. 3, 2020). ¶33.

{¶43}  A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. The willingness of a relative to care for the child does not alter what a court considers in determining permanent custody. *In re Patterson,* 134 Ohio App.3d 119, 730 N.E.2d 439 (9th Dist. 1999); In *re Adoption of Ridenour,* 61 Ohio St.3d 319, 574 N.E.2d 1055 (1991). Accordingly, a court is not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. *In re R.P. and I.S.,* 5th Dist. Tuscarawas No. 2011AP050024, 2011-Ohio-5378.

{¶44} We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), *citing In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994).

{¶45} In the present case, the trial court's decision indicates it considered the best interest factors. The trial court concluded the children's need for legally secure placement could not be achieved without awarding permanent custody to SCDJFS. Upon review of the record, the record supports the trial court's finding that granting the motion for permanent custody is in the children's best interest.

{¶46} E.H. and C.H. are placed in third party kinship care. They have been with the same family since their removal from their parents on November 22, 2019. During much of this placement they were cared for by a couple. Unfortunately, one of those parties passed away during the placement. The other party has continued to care for the children and is assisted by her adult children. The caregiver has an appropriate home. There are no hazards in the home for the children and the caregiver has all of the necessary medical equipment and medical training needed to care for the children's needs.

{¶47} The trial court found, and the record supports that A.C. and S.C. are not fully informed about the extent of the physical care required by the children and they are unprepared for that level of need. The couple have not discussed potential placement with the caseworker

since February, 2020. Their contact with E.H. was very limited; they have not seen her during the pendency of this case. They have never met C.H.

**{¶48}** The GAL presented a written report to the trial court that recommended permanent custody be granted to the SCDJFS.

**{¶49}** Father did not appear for the hearing.

## Conclusion

**{¶50}** For these reasons, we find that the trial court's determination that Father had failed to remedy the issues that caused the initial removal and therefore the children could not be placed with him within a reasonable time or should not be placed with him was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence. We further find that the trial court's decision that permanent custody to SCDJFS was in the children's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶51} Because the evidence in the record supports the trial court's judgment, we overrule Appellant-Father's two assignments of error, and affirm the decision of the Stark County Court of Common Pleas, Juvenile Court Division.

By Gwin, P.J.,

Hoffman, J., and

Delaney, J., concur